# COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Athey, Ortiz and Lorish
Argued at Norfolk, Virginia


CHARLES S. FRIEDMAN,
  NANCY M. FRIEDMAN AND
  OCEAN HILL PROPERTIES, INC.

v.      Record No. 0117-22-1

MONA FRIEDMAN SMITH,
  LAURA GOLDSTEIN,                                    MEMORANDUM OPINION[*] BY
  ESTATE OF GERALD FRIEDMAN,                          JUDGE CLIFFORD L. ATHEY, JR.
  FOUR SEASONS RESORT, INC. AND                       JANUARY 24, 2023
  JOHN W. RICHARDSON, AS LIQUIDATING TRUSTEE FOR
  OCEAN HILL COMMERCIAL, LLC AND
  SWAN BEACH COROLLA, LLC

NANCY FRIEDMAN

v.      Record No. 0495-22-1

ESTATE OF GERALD FRIEDMAN


                    FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                               David W. Lannetti, Judge

         George R.A. Doumar (Raj H. Patel; Brandon M. Goodwin; Doumar
         Martin PLLC; Hunter Hanger & Associates, P.C., on briefs), for
         appellants.

         John F. Sawyer (James S. Panagis, Jr.; Wolcott Rivers Gates, on
         brief), for Estate of Gerald Friedman, Swan Beach Corolla, LLC
         and Ocean Hill Commercial, LLC.

         No brief or argument for Mona Friedman Smith, Laura Goldstein,
         Four Seasons Resort, Inc. or John W. Richardson, as Liquidating
         Trustee for Ocean Hill Commercial, LLC and Swan Beach
         Corolla, LLC.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Nancy Friedman ("Nancy") and Charles Friedman ("Chip") appeal from orders entered in the Circuit Court of the City of Norfolk ("trial court") finding them in contempt for violating several previous orders entered by the trial court. Nancy and Chip contend that the trial court lacked the personal jurisdiction necessary to even consider the matters raised in the original orders. As a result, they argue that the trial court's ruling finding them in contempt was void. Nancy and Chip also contend that the trial court erred by finding them in contempt for violating orders that were not clear or definite in what activities were prohibited. We affirm in part and reverse in part.

## I. BACKGROUND

Gerald Friedman ("Gerald") and Nancy were divorced on July 31, 2017. During their marriage, Gerald was involved extensively in developing real property located primarily in Hampton Roads, Virginia and the Outer Banks of North Carolina while Nancy supported the family in her role as wife and mother. Gerald died following the entry of the divorce decree but prior to equitable distribution of their marital assets which included extensive real estate holdings in Virginia and North Carolina. During their marriage, as a part of their estate plan, Gerald and Nancy conveyed to their three, adult children, Mona Friedman Smith ("Mona"), Laura Friedman Goldstein ("Laura"), and Chip, various interests in the real estate at issue in the equitable distribution proceedings. As a result, their adult children became involved directly and indirectly in the equitable distribution proceedings. This well-meaning estate planning eventually led to eight lawsuits between the five family members with claims and counterclaims covering a range of issues including defamation, will contests, and the equitable distribution arising from the divorce.

While numerous properties and entities have been addressed during the resulting litigation, Four Seasons Resort, Inc. ("Four Seasons"), Ocean Hill Properties, Inc. ("OHP"), and

the actions related to the equitable distribution thereof are the pertinent issues raised in this appeal. Prior to the divorce, Gerald owned all the shares of stock in Four Seasons. Four Seasons owned a small commercial building which generated monthly rental income. Following the divorce, the parties mediated how to equitably distribute Four Seasons and OHP which resulted in: (1) Nancy and Gerald's Estate (the "Estate") agreeing to sell the real property owned by Four Seasons and dividing the proceeds equally, and (2) Nancy and the Estate agreeing that the Estate would sell its 50% interest in OHP to Chip in exchange for $220,000. As a result, Chip and Nancy would own 100% of OHP. The partial settlement agreements ("Agreements") were subsequently executed on January 30, 2019, and signed by Laura and Mona as co-executors of the Estate, Nancy, Chip, and Chip as "President" of OHP.

Near the conclusion of the hearing related to the Agreements, the trial court, with the express consent of Nancy and Chip, appointed Karen Crowley ("Crowley") as the conservator for the Estate. The trial court also stated that "Crowley, as Conservator, shall have decision making authority on the method of sale and the terms thereof and all terms of management [and that] Crowley shall also dissolve [Four Seasons] . . . ." Nancy expressly consented to the appointment and terms by initialing the page of the trial court's order concerning the appointment of the conservatorship. The trial court subsequently entered a final order regarding equitable distribution ("ED order") on January 10, 2020.

Following entry of the ED order, Chip, for the first time, asserted that OHP was the beneficiary of a $542,000 note made by Ocean Hill Commercial, LLC ("Ocean Hill Commercial"), a separate entity owned by the Estate and managed by Crowley as conservator of the Estate. Next, Chip contended that OHP, as a result of the note, was entitled to enforce a corresponding deed of trust against real property owned by Ocean Hill Commercial even though Chip conceded that the whereabouts of the original note were unknown. Doubting Chip's

veracity as to the existence of this lost phantom note,[1] and following a hearing, the trial court entered an order on September 18, 2020, providing that: "[Chip] shall not take any actions that affect the current status of the properties, including but not limited to those identified as the North Carolina Properties[2] identified in the mediated Settlement Agreements dated 1/30/2019 or take any actions that otherwise are inconsistent with the Agreements."

Finally, on October 22, 2020, the trial court entered a settlement agreement order ("SA order") which attached and incorporated the parties' settlement agreements. The provisions of the September 18, 2020 order regarding the prohibitions on Chip's activities were also expressly incorporated into the SA order, and a copy of that September 18, 2020 order was attached to and made a part of the SA order.

Rather than comply with the SA order, Chip assisted in the formation of 1215 Acceptance, LLC ("1215 Acceptance") and assigned the disputed phantom note and the disputed deed of trust to 1215 Acceptance on or about March 17, 2021. Through counsel, 1215 Acceptance demanded in writing that Ocean Hill Commercial pay off the disputed note in full. Next, 1215 Acceptance initiated a foreclosure proceeding under the disputed deed of trust against the real property owned by Ocean Hill Commercial and managed by Crowley.

Crowley, who had begun the process of selling the Four Seasons property pursuant to the court's previous order, received an offer from Nancy to buy the Four Seasons property for well below the property's appraised value. Chip, who advised Crowley that he was Nancy's "POA,"

---

[1] In Chip's supplemental response to Crowley's discovery requests, he responded to the interrogatory asking for "a detailed list of any unpaid obligations owed to any person or entity . . . by Ocean Hill Commercial, LLC." He said that "all notes and obligations have been previously provided to [Crowley] and are of record in the Equitable Distribution Case as heard by this court." The disputed note was not provided or mentioned to Crowley as of the date of the supplemental response.

[2] According to the Settlement Agreements, the "North Carolina Properties" included real estate owned by OHP and Ocean Hill Commercial.

attempted to negotiate the purchase of the property with Crowley, which culminated in Chip threatening Crowley in various email exchanges. Crowley rejected Nancy's initial offer, but made a counter offer which Nancy subsequently rejected. When Crowley received a higher offer for the Four Seasons property from a third party, Nancy filed a "Notice of Lis Pendens" and a "Complaint for Judicial Dissolution," as well as a "Declaratory Judgment" and a "Motion for a Preliminary Injunction" in the General Court of Justice, Superior Court Division, in the State of North Carolina, County of Currituck. As a result, the third party retracted their offer to purchase the Four Seasons property. Eventually, Crowley obtained and accepted another offer to purchase the property but by this point, $20,826.32 in legal fees and costs had been expended by Crowley to overcome Nancy's efforts to undermine the sale.

As a result, the trial court ordered a show cause hearing to determine whether Nancy and/or Chip should be held in contempt for violating the trial court's orders and the Agreements which were incorporated into those orders. At the conclusion of the show cause hearing, the trial court held in an order entered July 12, 2021, that Nancy and Chip had actual knowledge of the orders and knowingly and willfully disobeyed them. The trial court further found that Nancy and Chip were therefore in contempt for violating the trial court's orders, and it awarded the Estate damages in the amount of $20,826.32 against Nancy for her actions and $35,076.00 against Chip for his actions. Nancy and Chip appealed. Although they do not seek to rescind any past transactions, they do seek reversal of the trial court's finding of contempt as to their actions related to Four Seasons and OHP.

## II. Analysis

### A. *Standards of Review*

"Whether a court has acquired personal jurisdiction over a defendant presents a mixed question of law and fact." *Koons v. Crane*, 72 Va. App. 720, 732 (2021). "We defer to the

circuit court's factual findings and view the facts in the light most favorable to . . . the prevailing party below, but we review *de novo* the court's application of the law to those facts." *Id.* In reviewing a holding of contempt, "we may reverse the ruling of the [trial] court only if we find that it abused its discretion." *Id.* at 737.

### B. Nancy and Chip are estopped from challenging personal jurisdiction.[3]

Nancy and Chip argue that because the Estate never served OHP with a third-party complaint, the trial court could not exercise authority over OHP or prohibit enforcement of a North Carolina Deed of Trust because it did not have personal jurisdiction. They therefore maintain that the trial court erred by ordering that Chip take no action inconsistent with the settlement agreement. We need not consider whether the trial court had personal jurisdiction over OHP, because even if it did not, Nancy and Chip are equitably estopped from challenging personal jurisdiction in this matter.[4]

"While a mere general appearance, by itself, is not enough to retroactively validate a judgment that is void for lack of personal jurisdiction as a result of defective service, it is possible for a litigant to forfeit the right to make that challenge to the judgment." *McCulley v. Brooks & Co. Gen. Contractors*, 295 Va. 583, 591 (2018). We deny challenges like Nancy's and

---

[3] Nancy and Chip also argue that the trial court lacked subject matter jurisdiction to order a conservator to dissolve Four Seasons and sell its property. There is no question that the trial court had subject matter jurisdiction over the equitable distribution proceeding and that this Court has jurisdiction to review an order of contempt arising from an equitable distribution order. Because we find the equitable distribution order is not specific enough to support a contempt finding and Nancy and Chip do not seek to void the equitable distribution order, and because the assignment of error only questions whether the court had jurisdiction, we decline to reach the complicated question of whether the trial court had authority to appoint a conservator to dissolve a foreign corporation closely held by the parties in an equitable distribution proceeding.

[4] Nancy and Chip also argue that there was no personal jurisdiction over OHP since it was not properly served. However, the orders in question held Chip and Nancy in contempt individually and they were parties to the proceeding.

- 6 -

Chip's if the challengers have "actual notice of the judgment and ratified it by manifesting an intention to treat the judgment as valid," and if by granting relief from the judgment we "would impair another person's substantial interest of reliance on the judgment." *Id.*

> [E]quitable estoppel applies when a party "claim[s] that the court had no jurisdiction" or attempts "to discountenance the validity of its process" yet nonetheless "c[a]me into court and sought and obtained relief through proceedings regularly had therein" and thus "submit[ted] himself to the jurisdiction, and receive[d] benefits from its judgments."

*Id.* at 592-93 (quoting 3 Joseph Story, Commentaries on Equity Jurisprudence as Administered in England and America § 2020, at 581 (W.H. Lyon, Jr. ed., 14th ed. 1918)).

Both Nancy and Chip had notice of the trial court's judgment and ratified it by signature of their counsel. Chip also received the benefit by being able to buy the Estate's 50% share of OHP pursuant to the trial court's judgment. Because granting Nancy and Chip's requested relief would impair the Estate's reliance on the judgment as it concerns "property" and the "sale of assets," Nancy and Chip are equitably estopped from contesting the trial court's personal jurisdiction.

*C. The trial court abused its discretion by holding Nancy in contempt but did not err by holding Chip in contempt.*

Nancy and Chip contend that because the trial court's original orders were void, the subsequent findings of contempt were also void. Alternatively, they argue that the trial court erred because the order upon which the contempt is predicated is not definite as to its terms and contains no specific prohibitions. We reverse the trial court's decision finding Nancy in contempt but affirm its decision finding Chip in contempt.[5]

---

[5] They also argue that Chip's contempt order cannot stand because the trial court erred in finding that Chip and OHP "are estopped from enforcing, or making any claims based on, the Disputed Note and/or the Disputed Deed of Trust" and in finding the settlement agreement precluded Chip and OHP from enforcing the note and deed of trust. We need not reach the questions of whether the trial court properly applied estoppel against OHP or properly

"[A] party cannot be guilty of contempt of court for disobeying an order which the court had no authority of law to make, but if a court has jurisdiction over the parties and legal authority to render the order, then it must be obeyed . . . ." *Epps v. Commonwealth*, 47 Va. App. 687, 702 (2006) (en banc) (quoting *Robertson v. Commonwealth*, 181 Va. 520, 537 (1943)), *aff'd*, 273 Va. 410 (2007). "[T]o hold a litigant in contempt, the litigant must be 'acting in bad faith or [in] willful disobedience of [the court's] order.'" *Koons*, 72 Va. App. at 737 (quoting *Zedan v. Westheim*, 60 Va. App. 556, 574-75 (2012)). "[T]he process for contempt lies for disobedience of what is decreed, not for what may be decreed." *Winn v. Winn*, 218 Va. 8, 10 (1977) (quoting *Taliaferro v. Horde's Adm'r*, 22 Va. (1 Rand.) 242, 247 (1822)). "[B]efore a person may be held in contempt for violating a court order, the order must be in definite terms as to the duties thereby imposed upon him and the command must be expressed rather than implied." *Id.* (citation omitted). "If the actions of the alleged contemnor do not violate a clearly defined duty imposed upon him or her by a court's decree, the alleged contemnor's actions do not constitute contempt." *Wilson v. Collins*, 27 Va. App. 411, 424 (1998).

As previously discussed, since the original orders are not void, the subsequent findings of contempt are not void. Here, although the trial court ordered Crowley to sell Four Seasons, it did not place any prohibitions on Nancy. The trial court order's express command was directed at Crowley, not Nancy, and stated that, "Crowley, as Conservator, shall have decision making authority on the method of sale and the terms thereof and all terms of management [and that] Crowley shall also dissolve [Four Seasons] . . . ." Although Nancy signed the "Notice of Lis Pendens" and filed a "Complaint for Judicial Dissolution" and "Declaratory Judgment" and

---

interpreted OHP's rights under the settlement agreement. The court explicitly ordered Chip not to take any actions affecting the status of the properties covered in the settlement agreements. Chip took such action in his individual capacity. The court did not abuse its discretion in finding him in contempt as an individual.

"Motion for a Preliminary Injunction" in North Carolina, she violated no express command given by the trial court. Therefore, the trial court abused its discretion by finding Nancy in contempt and ordering her to pay $20,826.32 in legal fees and costs. We reverse this decision of the trial court.

Contrarily, the trial court explicitly stated that Chip should not take any action regarding the properties owned by the Estate. Yet, Chip then initiated foreclosure proceedings, by way of 1215 Acceptance, against Ocean Hill Commercial. Chip violated the explicit terms of the trial court's order which stated, "Chip Friedman shall not take any actions that affect the current status of the properties . . . or take any actions that otherwise are inconsistent with the Agreements." Therefore, the trial court did not abuse its discretion by holding Chip in contempt and ordering him to pay the Estate $35,076 in legal fees and costs. We affirm this decision of the trial court. Additionally, we award the Estate appellate attorney fees and costs against Chip pursuant to Rule 5A:30. We base our decision on 1) Chip's failure to prevail on appeal, 2) the Estate's request for fees, and 3) "all the equities of the case." *Friedman v. Smith*, 68 Va. App. 529, 546 (2018).

### III. CONCLUSION

For the aforementioned reasons, the trial court's judgment is affirmed in part and reversed in part, and the case will be remanded for a determination of reasonable attorney fees.

*Affirmed in part, reversed in part, and remanded.*