COURT OF APPEALS OF VIRGINIA

Present:   Judges Huff, Athey and Causey
Argued at Alexandria, Virginia

UNPUBLISHED

IVONEE CEDENO

v.        Record No. 1842-22-4

FOR EVERY BODY, LLC, ET AL.

MEMORANDUM OPINION* BY
JUDGE GLEN A. HUFF
APRIL 23, 2024

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
John M. Tran, Judge

Juliane Y. Smith (D'Lima Law, LLC, on briefs), for appellant.

Daniel L. Robey (Midkiff, Muncie & Ross, PC, on brief), for
appellee For Every Body, LLC.

Dawn E. Boyce (Kara A. Schmidt; McGavin, Boyce, Bardot,
Thorsen & Katz, PC, on brief), for appellee State Auto Property &
Casualty Insurance Company.[1]

Upon motion, the Fairfax County Circuit Court (the "circuit court") set aside a default

judgment against appellee For Every Body, LLC ("FEB") as void ab initio for lack of personal

jurisdiction.  Ivonee Cedeno ("appellant") appeals that ruling as well as the circuit court's

subsequent dismissal of her case against FEB for untimely service of process.  For the following

reasons, this Court affirms the circuit court's judgments.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] In her filings, including the notice of appeal, amended opening brief, and reply briefs,
appellant refers to State Auto Property & Casualty Insurance Company ("P&C") by name only
and does not designate P&C as an "appellee."  Nevertheless, appellant served copies of her
appellate filings on both P&C and appellee For Every Body, LLC ("FEB").  She also submitted a
reply brief to P&C's response brief.  Therefore, for purposes of the appeal, this Court treats P&C
as a properly named appellee along with FEB.

BACKGROUND[2]

On February 20, 2011, appellant purchased a 21-ounce glass jar candle, labeled "Sugar Cookie," from a Kohl's Department Store located in Herndon, Virginia. A sticker on the jar read: "Made in USA, Manufactured by: For Every Body, LLC." Approximately 30 minutes after appellant lit the candle on October 5, 2011, the jar exploded, "sending shards of glass and liquid, molten wax over [appellant]'s body and hair."

On October 4, 2013, one day before expiration of the two-year statute of limitations for her claim, appellant filed a complaint against several business entities seeking damages for her injuries caused by the 2011 explosion.[3] Nearly a year later, on October 3, 2014—one day before the statutory twelve-month mark for serving her complaint—appellant moved for a nonsuit as a matter of right.[4] She then refiled her complaint on April 2, 2015, "giving rise to the instant matter."[5]

---

[2] For purposes of this appeal, the relevant facts of this case are largely not in dispute. To the extent any material disputes relevant to this appeal do exist, this Court reviews the facts in the light most favorable to FEB, the prevailing party below. *See Specialty Hospitals of Washington, LLC v. Rappahannock Goodwill Indus., Inc.*, 283 Va. 348, 354 (2012); *City-to-City Auto Sales, LLC v. Harris*, 78 Va. App. 334, 340 (2023). In doing so, this Court grants FEB "the benefit of 'all reasonable inferences fairly deducible therefrom.'" *Marvin v. Marvin*, 51 Va. App. 619, 621 (2008) (quoting *Logan v. Fairfax Cnty. Dep't of Hum. Dev.*, 13 Va. App. 123, 128 (1991)).

[3] The case number assigned to the initial complaint was CL2013-15416.

[4] The circuit court granted appellant's nonsuit via an order entered October 8, 2014. The record does not contain evidence showing that appellant made any attempt to serve the defendants named in the initial complaint.

[5] Case No. CL2015-04354. Appellant was represented by Grace Burke Carroll, formerly of Carroll & Carroll PC, when the initial complaint was filed, but Carroll had to withdraw from the case after she was appointed as a judge on the Fairfax County Circuit Court. Gilbert Davis, of Old Dominion Advocates, LLC, took over on June 26, 2014, after which he assisted appellant in non-suiting the case on October 8, 2014, and then refiling the complaint on April 2, 2015. Davis "became incapacitated in late February or early March" of 2016 and was incapable of adequately representing appellant. Although Davis testified at a hearing on July 19, 2016, the circuit court was unable to receive a sufficient explanation for the lack of service effected

The complaint raised negligence and product liability claims against named defendants FEB, Langley/Empire Candle LLC, Kohl's Departments Stores Inc. or Kohl's Corporation, and Home for Everybody LLC ("HEB"). Despite recognizing that FEB was organized under Utah's laws, the complaint listed the same California address for both FEB and HEB: "Serve: Jim Alexander[,] 2681 Trabuco Road[,] Suite E326[,] Mission Vejo, CA 92691."[6] Appellant waited nearly a full twelve months before attempting to serve any process on FEB and HEB, despite being warned by multiple attorneys that her deadline for making such service was April 1, 2016.[7]

On March 28, 2016, after the Easter holiday, appellant emailed a reminder "of the Statute of Limitations on [the] candle case" to her current attorney, Juliane Smith. Smith responded by asking appellant to send her "a copy of the complaint[.]" The following day, Smith emailed appellant again, stating "I have put in requests to the Fairfax Circuit Court and the Secretary of

---

between refiling in April 2015 and Davis's incapacitation around the end of February 2016. Appellant ultimately filed a complaint against Davis with the Virginia State Bar (VSB Docket No. 16-051-10359), but it appears that Davis passed away before resolution of that investigation.

[6] HEB is not a party to this appeal. Although the circuit court did not explicitly dismiss the claims against HEB in its final order, it appears to have done so by implication in acknowledging that HEB is "a Delaware Limited Liability Company involved in real estate in California and unrelated to any party to this action." Appellant raises no arguments directed towards HEB on appeal.

[7] Between Davis's withdrawal and Smith's involvement, appellant attempted to obtain representation from other firms, all of whom refused to take her case but reminded her to serve the defendants by April 1, 2016.
On August 7, 2015, Shapiro, Appleton & Duffan, PC, urged appellant "to seek out another personal injury law firm" and instructed appellant that "service of process must be perfected on any defendants in the lawsuit inside one year from the [April 2, 2015] date of filing." Doug Bywater, from Tate Bywater Attorneys, and Richard Somer, from Hilton & Somer, LLC, sent similar correspondence to appellant via email on October 15, 2015 and December 15, 2015, respectively, declining to represent her. Mr. Somer nevertheless informed appellant it was "imperative" she "have the Complaint and Summons served on each defendant on or before April 1, 2016" or else her "cause of action will be barred forever by the statute of limitations." And Mr. Bywater advised appellant that "[s]ince the case was non-suited once you do not get another non-suit. If you have not served any of the defendants by April 1, 2016, then those not served will not be part of any case."

the Corporation Commission (for the out-of-state defendants) to have the defendants served." The certificates of compliance for such service, however, certify that the clerk of the Virginia State Corporation Commission ("SCC") was not served until April 1, 2016, as statutory agent for FEB and HEB in accordance with Code § 12.1-19.1.  The clerk further certified to sending a copy of the complaint, as required by Code § 12.1-19.1, to both FEB and HEB on April 7, 2016, at the Mission Vejo address provided by appellant.[8]

In June 2016, the clerk of the circuit court attempted to send letters regarding scheduling conferences to FEB and HEB using the Mission Vejo address, c/o Jim Alexander.  The letters were returned with stamps reading: "Return to Sender.  Not deliverable as addressed.  Unable to forward."[9]  During that time, neither FEB nor HEB filed any pleadings or motions nor made any other appearance in the case.  As a result, appellant moved for default judgment against FEB and HEB on November 7, 2016.[10]  The circuit court entered an order granting appellant's motion on

---

[8] During the July 19, 2016 hearing before the circuit court, Smith testified that she didn't become involved in appellant's case until March 28, 2016, the day before she sent the requests for service on the defendants.  The record indicates, however, that Smith was aware of and to some extent involved in conversations about the case prior to March 28, 2016.

Appellant also testified at the July 2016 hearing that she knew Smith back when Davis was working on her case because Smith "was always with Mr. Davis[.]"  Smith even admitted in her own testimony that she had worked for Davis before starting her own practice in January 2015 and that some of his clients would continue to contact her.  And, because of Davis's health problems, she "helped show [appellant] how to do the re-filling" of the complaint prior to April 2015.

[9] The record contains two other returned notices, received and filed by the circuit court on May 26, 2016, addressed as "Undeliverable, Commercial Mail Receiving Agency, No Authorization to Receive mail for this Addressee" and stamped as "Return to sender attempted —- not known.  Unable to Forward."  While not entirely clear, the record appears to indicate that those mailings were initially sent to FEB and HEB at the same Mission Vejo address.

[10] By that point, the other named defendants in the case had been dismissed for "failure to effect service of process within one year of the commencement of the case."  *See* Code § 8.01- 275.1; Rule 3:5(e).  Pursuant to the defendants' motions, the circuit court—by Judge Randy Bellows—entered orders dismissing Langley/Empire Candle and Kohl's Corporation from the case in June 2016, as well as dismissing Kohl's Department Stores Inc. in October 2016.  The court further denied appellant's second motion for a non-suit, filed July 13, 2016,

March 31, 2017, in which it found that service "through Secretary of the [SCC] ha[d] been effected on April 11, 2016 . . . as shown by a Certificate of Compliance duly filed" on that date.[11]

Appellant was unsuccessful in enforcing the judgment against either FEB or HEB.[12]  She eventually brought a declaratory judgment action against State Auto Property & Casualty Insurance Company ("P&C") after discovering that P&C had been FEB's insurer in 2011.  By order entered January 14, 2022, the United States District Court in the Eastern District of Virginia directed P&C "to pay the judgment against its insured" without rendering an opinion on the merits of the underlying state default judgment.[13]  P&C then filed a single motion in the circuit court on January 19, 2022, simultaneously seeking to vacate the default judgment for lack of jurisdiction and dismiss the case for untimely service of process.[14]

---

noting that after taking the first nonsuit in 2014, appellant was "not entitled to a non-suit as of right . . . ."

[11] After conducting a hearing for damages on May 5, 2017, the circuit court awarded appellant a $2 million judgment against FEB and HEB, jointly and severally.  Pursuant to Rule 1:13, the court waived the defendants' endorsement of the order.

[12] Appellant served a summons for garnishment against "State Automobile Mutual Insurance Company" in April 2018, but later withdrew the summons for reasons not indicated on the record.

[13] Regarding the validity of the underlying judgment, the circuit court found that "[t]he district court didn't agree to the merits. . . . [It] said it's the state court's decision, not the district court decision."

[14] P&C first argued the default judgment was void for lack of proper service because appellant

> can produce no evidence that [HEB] and [FEB] are "related companies." . . .  In fact, [HEB] and [FEB] are wholly separate and unrelated entities with distinct and different ownerships and different registered agents. . . .  [Regardless,] the statutes for service on a foreign limited liability company do not provide for service of process to be effectuated on the registered agent of a foreign corporation's "related company."

The circuit court held a hearing on that motion on February 4, 2022. P&C asserted then, as it does now on appeal, that it obtained standing as a "judgment debtor" under Code § 8.01-428(A), despite not being a party to the case, because the federal court had ordered it to pay "the default judgment taken against the insured, [FEB]."[15] It then argued that appellant never effectively served process on FEB because the "last known address" appellant provided in its request for service via the SCC was incorrect and could not have been reasonably thought to provide sufficient notice.[16] In essence, P&C contended that the Mission Vejo address appellant provided to the SCC had no factual, let alone reasonable, connection to FEB. It also alleged that review of the website for Utah's SCC would have shown that Rebecca Lunceford, as FEB's continuously named registered agent, "was and has always been the last known person responsible for service" for FEB at 880 W. 405 N, Lindon, UT.

P&C then argued for dismissal of the case against FEB because appellant had not exercised due diligence to "properly serve[] process upon either the clerk of the [SCC] or [FEB] in accordance with Va. Code § 12.1-19.1."

[15] Appellant argues that P&C could have litigated this issue as a counterclaim in state court instead of removing the declaratory judgment action to federal court.

[16] P&C made the following cascading argument:

> [I]n terms of whether there was appropriate service under the statute, the known addresses for . . . [FEB] were not used. The registered agent for [FEB] was not used. The P.O. Box that [appellant] learned about in 2013 was not used. The [SCC] secretary or division in Utah was not used. [Appellant] just picked a random company in California and represented to the court that they were related. . . . [I]f [appellant] had at least sent it to the P.O. Box on the forwarding envelope, [she] could at least say as of 2013 that was an address that was known. But [appellant] didn't even do that.

In response, appellant alleged that the Mission Vejo address was linked to HEB,[17] which she had assumed was connected to FEB based on her receipt of a return envelope from a Utah P.O. Box address in September 2013 that was stamped with a California forwarding address.[18] As such, she claimed that none of the Utah addresses registered for FEB could be valid and that "last known address" means "known to the plaintiff." When questioned by the circuit court on this series of assumptions, appellant's counsel admitted that she had no personal knowledge of the contents or context for the return envelope because she was not involved in the case back in 2013. And she provided no other explanation as to why she used the Mission Vejo address as the "last known address" instead of the forwarding address to P.O. Box 5430, La Quinta, California.[19]

---

[17] P&C presented evidence of certified records from California showing that "the last address for [HEB] was the Muirlands address, not the address used in this case for service. It identifie[d] James Alexander and Michelle Alexander as members. And very significantly, it's a Delaware company. It's not a Utah company." Those corporate records also described HEB as a "property management firm" rather than a candle manufacturer.

[18] Appellant's complaint stated that FEB "was at all times relevant to this action a company duly organized and existing under the laws of the state of Utah, with its principal place of business located at 222 South 760 West, Orem, Utah 84058 and upon information and belief now a California entity." Neither Utah nor California records listed that address in association with FEB.

[19] The relevant conversation between the circuit court and appellant's counsel is as follows:

> THE COURT: . . . you have a very odd postal return; right? Because it's not attached to the envelope.
>
> MS. SMITH: Yes, your Honor, that was the file as I was given it.
>
>     . . . .
>
> THE COURT: So in the record itself, I don't really have any evidence that the plaintiff was informed that the Utah company moved to California from -- just from the return.

On February 7, 2022, the circuit court rendered a partial order on P&C's motion, pursuant to Code § 8.01-428(A)(ii), vacating the default judgment as void ab initio for lack of personal jurisdiction caused by invalid service of process.[20] Based on the parties' representations and evidence, the circuit court found not only that HEB had no reliable connection to FEB or to any other party named in the complaint, but also that nothing in the record linked FEB to the Mission Vejo mailing address.[21] The court thus concluded that "reliance on an incorrect mailing address does not meet Va. Code § 12.1-19.1(F)'s requirement that the party seeking substitute service provide the 'latest known mailing address of the defendant.'" To hold otherwise, by

MS. SMITH: That again, your Honor, honestly is something of plaintiff's first counsel. These are files as I got them. That she had, you know, reason to believe that they moved to California. I think one of the big reasons was because of that return envelope that they were no longer in Utah.

. . . .

THE COURT: In 2013. But when 2016 came around, and you tried to serve them, you had no information that they existed in California.

MS. SMITH: We didn't. But then we didn't have any information as far as a later known address for them as well. That was the latest known address that we had for them. . . . I think under the assumption that they had moved to California and then doing a search in California, that became a later known mailing address.

THE COURT: But that's a different name. It's A Home For Everybody. It wasn't [For] Every Body, LLC. . . . [Y]ou all assumed. And this entity was not having anything to do with the sale of candles.

[20] The circuit court found that the parties had not "adequately address[ed] the issue of whether as a result of vacating the default judgment, the moving party—[P&C]—still has standing before this court to seek further relief such as dismissal of the case and that dismissal is appropriate and the only remedy to consider."

[21] Appellant had "attempted substitute service through the Clerk of the [SCC] on the Defendant [FEB], a Utah entity, by using the mailing address of an unrelated Delaware [LLC] with a California address . . . ."

- 8 -

"accept[ing] any address provided even if the address is for any entity other than the defendant[,]" "would render the statute meaningless[.]"[22]

The circuit court reserved ruling, however, on the motion's second issue of dismissal and continued the case for the parties to address "whether service upon the Clerk of the Commission on April 1, 2016, was timely or whether due diligence will extend the time for service under Virginia Code § 8.01-335."[23] On February 16, 2022, counsel for FEB served a notice of special

---

[22] In making that ruling, the circuit court expressly held:

> [t]he plain meaning of the "latest known mailing address of the defendant" read along with other provisions under Va. Code § 12.1-19.1 compels application of an objective standard and not the subjective albeit mistaken belief of counsel that the defendant's latest known mailing address was the address belonging to an unrelated entity that carried a similar but not the same name.

Appellant argues the circuit court erred in applying an objective, rather than subjective, standard. To best effect the plain intent of Virginia's statutes governing service of process, this Court adopts a middle approach by which a party's subjective belief as to the lastest known address, even if mistaken, will be deemed to comply with the requirements of Code § 12.1-191(F) *so long as* such belief is objectively reasonable. Although it may involve consideration of some of the same factors, the question of objective reasonableness is distinct from a determination of due diligence under Rule 3:5(e) and Code §§ 8.01-277 and -335.

[23] Although the court made no ruling at that time on the motion to dismiss, it acknowledged that the question of whether appellant exercised due diligence under Code § 8.01-335 required the court to "consider whether a good-faith but mistaken belief as to the latest known mailing address of the defendant can still be considered due diligence." The court then noted a few factual findings relevant to that consideration:

  i. That FEB "sold its assets to Langley/Empire Candle, LLC" in 2011 and, as a result, "was no longer an active entity" by 2016.
  ii. That appellant "was on notice that there were separate entities involved in this lawsuit" when "Langley/Empire Candle LLC actually appeared as a separate defendant . . . [and was] dismissed due to [appellant]'s failure to timely effect service on it."
  iii. That "the asset purchase agreement highlights the flaw in linking a third California LLC" to FEB and that disclosure of such "would have alerted the court as to the defective service."
  iv. "[T]hat not only was an incorrect entity identified as an agent of one defendant but the other named defendant under the May 15, 2017 judgment—[HEB], a California

- 9 -

appearance "to contest the jurisdiction" of the circuit court. As a result, the circuit court entered an order on February 18 joining FEB to P&C's motion and setting a hearing for April 22, 2022. FEB subsequently filed its own motion and accompanying memorandum by special appearance to dismiss the case with prejudice. It also incorporated by reference "the arguments and authorities presented to the Court" in the memorandum P&C filed in support of its initial motion to set aside the default judgment and dismiss the case. As its basis for dismissal, FEB first asserted that appellant's "application for substitute service" was untimely because it was not filed in the circuit court "until April 11, 2016," ten days after "the one-year deadline." FEB then argued that appellant did not exercise due diligence because she failed to take any action "that would be expected from a reasonable and prudent person under the particular circumstances" in accomplishing timely and effective service of process.

A week before the hearing, appellant filed a motion seeking another nonsuit. She also filed responses in opposition to FEB's motion for dismissal by special appearance and to P&C's motion to dismiss. Only four days before the hearing, appellant filed a certificate of compliance from the clerk of the SCC who attested to having been served with process "as a statutory agent for [FEB] in accordance with § 12.1-19.1" on April 15, 2022.[24] Pursuant to appellant's request, the clerk mailed a copy of the service of process to FEB at the following Utah address: 880 W. 405 N[,] Lindon, UT 84042, United States."

At the hearing, the parties presented the same arguments raised in their motions, focusing primarily on the issue of appellant's due diligence. FEB relied heavily on a letter dated July 14, 2016, showing that Smith wrote to Rebecca Lunceford: "who we know was the one and only

---

LLC—is unrelated to any party in this action and there are no facts to suggest that it ever transacted business in Virginia."

[24] Attached to the certificate is a copy of appellant's request for service on the clerk of the SCC, made pursuant to Code § 13.1-1057(E).

- 10 -

registered agent [for FEB] from its inception in 1995 until its dissolution in 2011." Although the letter did not inform Lunceford about the pending lawsuit against FEB, it showed that appellant "had the right information" because she utilized the 880 West 405 North, Lindon, Utah address, which was the last address for FEB registered with the SCC in Utah.[25] FEB pointed to the letter as proof that the correct address "was obviously easily obtainable" and that appellant did not use due diligence to discover that information two months previously when she attempted to serve process through the SCC using the Mission Vejo address.

Appellant conceded that "due diligence is a factual question" requiring the court "to look at the circumstances of each case." She then argued that her recent service on FEB, despite being six years overdue, could still be deemed timely if the circuit court found that "there was a good faith mistake as to the [initial] address" and that appellant had exercised due diligence in her overall attempts to properly serve FEB.[26] Notwithstanding that argument, appellant also alleged that "the [relevant] statutes clearly provide for nonsuit as an alternative remedy" regardless of whether the circuit court finds due diligence.

---

[25] Smith states in the letter that her firm represents appellant "who suffered an injury related to a product manufactured by [FEB] during 2011." She further states that the firm has "a few questions regarding [FEB]" and is "interested in requesting information from the last owner or registered agent of the company." She then writes, in bold: "At this time we are requesting either an email or mailing with the name and address of the last registered agent or company owner." Nowhere in the letter does Smith refer to or provide the case number for the pending lawsuit in the circuit court. Nor does she mention her recent attempt to serve FEB through the SCC at the Mission Vejo address.

[26] FEB responded that "a good faith belief . . . doesn't mean that there was good faith diligence." Neither appellant nor her counsel made any attempt to serve the defendants "from the time the first complaint was filed until a day before the year on the second complaint . . . ." And even then, appellant did not use the "easily obtainable" address for FEB's registered agent when attempting to serve process in April 2016; had appellant made any effort to look online or call the Utah SCC, she would have known that Rebecca Lunceford was "the last registered agent" at the Lindon, Utah address.

The circuit court issued a final order of dismissal on August 19, 2022. Recognizing that "[d]iligence to effect service cannot rest[] solely on the labors undertaken by counsel of record[,]" the circuit court found that appellant "did not exercise due diligence in serving the correct defendant in this case that started a decade ago."[27] Based on this combination of untimely service and lack of due diligence, the court denied appellant's motion for a second nonsuit and granted both FEB's and P&C's motions to dismiss the case with prejudice.[28] The court then directed FEB to "draft and circulate an Order for entry reflecting the decision of the Court . . . that will also allow [appellant] to list such objections as are necessary." Such order was entered October 27, 2022, with appellant's written objections appended to the order as Exhibit A.

This appeal followed.

ANALYSIS

Appellant raises multiple assignments of error challenging the circuit court's decision to set aside the 2017 default judgment and to dismiss the case with prejudice.[29]

---

[27] The court further recited that "[t]he facts reflecting attempts at service were previously considered in the decision setting aside the default judgment and examined again at the hearing to dismiss for untimely service . . . ." Under the facts and circumstances of this case, the court determined that "[s]erving the incorrect entity in lieu of the defendant does not warrant a finding of due diligence."

[28] The circuit court also held that P&C had standing under Code § 8.01-428 to challenge the default judgment because P&C was FEB's insurer and "was held responsible for the judgment entered against [FEB]." Consequently, the court further concluded that P&C had "sufficient associational or representational standing to protect the interests of its insured" and that there existed "enough economic incentive to assure the Court that P&C will fairly and vigorously contest any opposition to dismissal of this case."

[29] Each of appellant's assignments of error, with the exception of #6, raise various arguments challenging the court's granting of "P&C's Motion to Set Aside the Default Judgment, FEB's Motion to Dismiss, and P&C's Motion to Dismiss." Not every stated argument, however, applies to all three of those motions and the court's associated final judgment. For clarity, and to avoid redundancy, this Court addresses appellant's assertions in the

I. Standard of Review

On appeal, this Court "gives deference to the trial court's factual findings but reviews legal issues de novo." *Ali v. Commonwealth*, 75 Va. App. 16, 29 (2022); *see also Quyen Vinh Phan Le v. Commonwealth*, 65 Va. App. 66, 76 (2015) ("To the extent an assignment of error involves statutory construction, we review these issues *de novo*."). Accordingly, this Court will not disturb factual determinations unless "they are 'plainly wrong or without evidence to support [them].'" *Grayson v. Westwood Buildings L.P.*, 300 Va. 25, 58 (2021) (quoting Code § 8.01-680). "This deferential appellate standard 'applies not only to findings of fact, but also to any reasonable justified inferences the fact-finder may have drawn from the facts proved.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248-49 (2016) (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). But whether a trial court's determination as to "[h]ow the governing legal standard applies to those presumptively correct facts . . . is a question of law entitled to no deference on appeal." *Grayson*, 300 Va. at 58.

II. Question of P&C's Standing in Circuit Court

In her first assignment of error, appellant asserts that the circuit court erred in finding that P&C had standing to seek vacatur of the default judgment and dismissal of the case. Thus, she argues, the circuit court erred in granting P&C's motions. Assuming without deciding that the circuit court erred in determining P&C had standing to challenge the default judgment, this Court finds any such error harmless.

"[A] non-constitutional error is harmless 'if, when all is said and done, the error did not influence the jury, or had but slight effect.'" *Spruill v. Garcia*, 298 Va. 120, 127-28 (2019) (quoting *Commonwealth v. Swann*, 290 Va. 194, 201 (2015) (per curiam)). As explained below, the record

---

context of three distinct categories: P&C's standing; the default judgment against FEB being void ab initio; and the circuit court's exercise of discretion in dismissing the case.

supports a finding that the circuit court would still have vacated the default judgment and dismissed the case even if it had determined that P&C lacked standing under Code § 8.01-428.[30] Because the matter of P&C's standing would not have changed the ultimate outcome of the case, the circuit court's decision to vacate the default judgment on the basis of P&C's motion does not constitute reversible error.[31] *See Graves v. Commonwealth*, 65 Va. App. 702, 712 (2016) ("This Court may uphold a decision on the ground that any error involved is harmless only if it can conclude . . . 'that the error did not influence the [fact-finder] or had but slight effect.'" (quoting *Clay v. Commonwealth*, 262 Va. 253, 260 (2001))). Accordingly, this Court declines to address the merits of the parties' arguments regarding whether P&C qualified for standing under Code § 8.01-428.[32]

After holding that P&C had standing to challenge the default judgment as FEB's insurer, the circuit court set aside the judgment on the basis of P&C's argument that the court had not acquired personal jurisdiction over FEB as a result of appellant's ineffective service of process.[33] Following that ruling, but before the court held a hearing on P&C's motion to dismiss, FEB filed

---

[30] "'[S]tatuory standing' . . . asks 'whether the plaintiff is a member of the class given authority by a statute to bring suit.'" *Cherrie v. Va. Health Servs., Inc.*, 292 Va. 309, 315 (2016) (quoting *Small v. Fed. Nat'l Mortg. Ass'n*, 286 Va. 119, 125 (2013)).

[31] Under that same rationale, this Court need not address appellant's additional argument assigning error to the circuit court's finding that P&C retained standing to seek dismissal of the case even after the default judgment was vacated.

[32] Under the doctrine of judicial restraint, this Court has "an 'obligation to decide cases on the best and narrowest grounds available.'" *Theologis v. Weiler*, 76 Va. App. 596, 603 (2023) (quoting *Esposito v. Va. State Police*, 74 Va. App. 130, 134 (2022)). "The 'best' answer to a legal question is the one with which the least number of jurists would disagree or, in other words, the one with which the greatest number of jurists would agree. The 'narrowest' answer to a legal question is the one affecting the least number of cases." *Butcher v. Commonwealth*, 298 Va. 392, 396 (2020).

[33] In subsequent assignments of error, appellant directly challenges the circuit court's holding by arguing that she effected proper service on FEB under the relevant statutes. This Court addresses those claims in the section below.

- 14 -

its own motion, via special appearance by counsel, seeking dismissal of the case. Although appellant contested P&C's standing, she admitted that FEB had standing as a "judgment debtor" under Code § 8.01-428(A) to challenge the default judgment and the underlying case.[34]

FEB incorporated into its motion "the arguments and authorities presented to the Court" in P&C's first motion, which both challenged the default judgment and sought to dismiss the case with prejudice. In articulating why appellant had not exercised due diligence to effect timely service, FEB restated the series of facts showing that appellant's unsuccessful attempts at service did not confer personal jurisdiction over FEB upon the circuit court.

After hearing argument from both P&C and FEB on the question of dismissal, the circuit court issued a final order granting both motions to dismiss on the same grounds. In determining that "[s]erving the incorrect entity in lieu of the defendant does not warrant a finding of due diligence[,]" the circuit court explicitly acknowledged that "[t]he facts reflecting attempts at service were previously considered in the decision setting aside the default judgment and examined again at the hearing to dismiss for untimely service of the complaint." The record, therefore, demonstrates that the circuit court relied upon the same material facts and legal authorities in both setting aside the default judgment and dismissing the case. *See Mall Amusements, LLC v. Va. Dep't of Alcoholic Beverage Control*, 66 Va. App. 605, 618 (2016) ("In considering whether an error was harmless, the error must be considered 'in the context of the entire case.'" (quoting *Montgomery v. Commonwealth*, 56 Va. App. 695, 704 (2010))).

Consequently, this Court concludes that, had FEB filed its pleadings first or at the same time as P&C, the circuit court would have granted FEB's motion to set aside the default

---

[34] Code § 8.01-428(A) permits the circuit court to set aside a default judgment "[u]pon motion of the plaintiff or judgment debtor" on any of the four enumerated grounds: "(i) fraud on the court, (ii) a void judgment, (iii) on proof of an accord and satisfaction, or (iv) on proof that the defendant was, at the time of service of process or entry of judgment, a servicemember as defined in 50 U.S.C. § 3911."

judgment for lack of personal jurisdiction. That FEB joined the case only after the court had already vacated the judgment on the basis of P&C's motion—the sole pleading pending at that time—merely renders harmless the circuit court's assumed error regarding P&C's standing under the circumstances of this case.[35] This Court, therefore, turns its attention to appellant's subsequent assignments of error.

III. Default Judgment Void Ab Initio For Lack of Personal Jurisdiction Over FEB

Separate from the issue of standing discussed above, appellant asserts that the circuit court erred in setting aside the default judgment because FEB had been properly served.[36] This Court disagrees, finding no error in the circuit court's determination that appellant failed to effect service on FEB prior to entry of the default judgment. As a result, the circuit court did not err in

---

[35] Indeed, the timing of FEB's appearance suggests more than mere coincidence; it indicates communication and coordination between FEB and P&C, behind the scenes of the circuit court proceedings. Such instances of mutual cooperation are not uncommon in situations where, like here, the parties to a contractual insurance relationship are both subject to the effects of a multi-million-dollar judgment. The practical considerations between the insurance carrier (P&C) and the insured (FEB) typically generate a joint strategic approach for challenging the judgment.

Here, as appellant herself suggests, the contractual insurance relationship between P&C and FEB resulted in FEB having knowledge of the default judgment in advance of P&C filing its motion to set aside the judgment. Because P&C was representing both its and FEB's interests, FEB conceivably refrained from making an appearance in the case until it felt compelled to protect its interests directly after the circuit court expressed concern over P&C's standing to seek dismissal of the case. Conversely, had the circuit court granted P&C's motions to set aside the judgment and dismiss the case at the same time, FEB would have had no incentive to make any appearance at all, having achieved its desired outcome through the efforts of P&C. Frankly, but for such ongoing cooperation between P&C and FEB, this Court finds no plausible explanation in the record for FEB's otherwise "sudden" awareness of the case, made in time to file its own motion to dismiss by special appearance, given that appellant had still not effected proper service on FEB at that point.

[36] In assignments of error 2-4, appellant asserts that she effected proper service on FEB because she used its latest known mailing address, satisfied the requirements for substituted service, and relied upon an address not substantially less likely to bring notice to FEB than any other feasible substitute. She asserts that the circuit court misinterpreted the relevant service of process statutes, including Code §§ 8.01-312 and 13.1-1057, as well as the phrase "latest known mailing address" in Code § 12.1-19.1(F).

exercising its discretion under Code § 8.01-428(A) to set aside the default judgment for being void ab initio based on the court's lack of personal jurisdiction over FEB when the judgment was entered.[37]

Pursuant to Code § 8.01-428(A), "[u]pon motion by the plaintiff or judgment debtor[,] . . . the court may set aside a judgment by default" that is "a void judgment." A judgment rendered in the absence of the court's personal jurisdiction over the defendant is void. *See generally Holland v. Commonwealth*, 62 Va. App. 445 (2013); *Parrish v. Jessee*, 250 Va. 514 (1995). As relevant here, a court may obtain personal jurisdiction over a defendant who has been properly served with process.[38] To subject a defendant to the court's jurisdiction in this manner, the plaintiff's service of process must comply with all applicable statutory requirements.

*Ineffective Service Rendered Default Judgment Void*

Prior to entry of the default judgment in the instant matter, appellant sought to serve FEB only by substituted service through the clerk of the SCC, pursuant to the relevant provisions in Code §§ 13.1-1018, 13.1-1057, 12.1-19.1, and Chapter 8 (§§ 8.01-287 et seq.) of Title 8.01. In considering whether the circuit court abused its discretion by determining that appellant's attempted service was ineffective, this Court reviews the interpretation of the applicable statutes

---

[37] *See Sauder v. Ferguson*, 289 Va. 449, 461 n.8 (2015) (recognizing that a circuit court may err "in denying a motion to set aside the default judgment [under Code § 8.01-428(A)] for lack of service when a defendant challenges the circuit court's exercise of personal jurisdiction and seeks to preclude enforcement of the judgment" (citing *Lifestar Response of Md., Inc. v. Vegosen*, 267 Va. 720, 724-25 (2004); *O'Connell v. Bean*, 263 Va. 176, 178-80 (2002); *Dennis v. Jones*, 240 Va. 12, 19-20 (1990))).

[38] *See also* Code §§ 8.01-328 (defining "person" for purposes of service of process); 8.01-328.1 (providing specific circumstances in which a court may exercise personal jurisdiction over a person); 8.01-330 ("A court of this State may exercise jurisdiction on any other basis authorized by law." For example, a court may exercise personal jurisdiction over a defendant who voluntarily makes a general appearance in the case, either in person or by filing responsive pleadings. FEB did not do so here. In fact, the first appearance FEB made was by special appearance of counsel in 2022. Only by appellant's subsequent effective service of process did the circuit court first obtain jurisdiction over FEB.

de novo but defers to the circuit court's factual findings regarding the steps appellant took to serve FEB. *See Ali*, 25 Va. App. at 29; *Grayson*, 300 Va. at 58.[39]  Under that standard of review, this Court concludes that the circuit court lacked personal jurisdiction over FEB to enter the default judgment because appellant's attempted service on FEB through the clerk of the SCC did not comply with the statutory requirements for substituted service.

At the outset, this Court acknowledges that the parties do not dispute appellant's statutory authority to effect service on FEB through substituted service on the clerk of the SCC.[40] Accordingly, the issue for this Court to resolve is the legal adequacy of the address appellant used when serving the SCC in 2016.  In general, the address an appellant uses to serve a defendant must provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Eddine v. Eddine*, 12 Va. App. 760, 763 (1991) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).  More specifically, substituted service through the clerk of the SCC, pursuant to Code § 12.1-19.1(F), must include the "latest known

---

[39] "[T]he decision whether to grant . . . [a] motion to set aside the default judgment rest[s] within the sound discretion of the circuit court." *Sauder*, 289 Va. at 458.  "The abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions." *Porter v. Commonwealth*, 276 Va. 203, 260 (2008).  Although this "standard of review necessarily must include a review of any legal conclusions made concomitant with a lower court's exercise of discretion, that does not mean abuse of discretion review is partially de novo." *Lawlor v. Commonwealth*, 285 Va. 187, 214 (2013).  Rather, "[t]o the extent the Court's analysis involves statutory interpretation, questions of statutory construction are also reviewed under a de novo standard." *Ruderman v. Pritchard*, 76 Va. App. 295, 302 (2022).  Under this approach, a court inherently makes a mistake of law by incorrectly interpreting a relevant statute.

[40] FEB is a nonresident limited liability company formed in Utah.  Assuming for purposes of this appeal that FEB transacted business in Virginia, it did so without a certificate of registration.  *See* Code § 13.1-1057 (deeming the clerk of the SCC appointed as an "agent for service of process" for "any foreign limited liability company transact[ing] business in the Commonwealth without a certificate of registration"); Code § 12.1-19.1(F) (requiring a party seeking service via the SCC to "provide the latest known mailing address of the defendant" "in the event the Commission does not have a record of the defendant's address").

mailing address of the defendant." An address that does not satisfy this requirement renders the service of process ineffective.

After finding that the Mission Vejo address appellant provided to the SCC had no plausible connection to FEB in either 2013 or 2016, the circuit court determined that the address was "substantially less likely" to provide notice to FEB than any of the known Utah addresses associated with FEB or even the California P.O. Box marked as a forwarding address in 2013. *See Meade v. Commonwealth*, 74 Va. App. 796, 806 (2022) ("[O]n appellate review, [this Court] view[s] . . . evidence not to determine what we think happened, but for the limited purpose of determining whether any rational factfinder could have viewed it as the [circuit] court did."). The circuit court further found, by applying an objective standard, that the Mission Vejo address did not constitute FEB's "last known address" for purposes of effective service under Code § 12.1-19.1.

Having a dearth of authority on the meaning of the phrase "latest known mailing address," this Court construes Code § 12.1-19.1(F) to reflect the circuit court's approach rather than appellant's suggested subjective standard.[41] Viewed through that lens, a plaintiff's good faith belief, albeit mistaken, as to a defendant's "last known address" may still constitute valid service *as long as* an objectively reasonable person in the plaintiff's situation would have come to the same subjective belief.[42]

---

[41] "When construing a statute, our primary objective is 'to ascertain and give effect to legislative intent, as expressed by the language used in the statute." *Haefele v. Commonwealth*, 75 Va. App. 591, 599 (2022) (quoting *Blake v. Commonwealth*, 288 Va. 375, 381 (2014)). "[T]his Court 'examine[s] a statute in its entirety, rather than by isolating particular words or phrases.'" *Lucas v. Woody*, 287 Va. 354, 365 (2014) (second alteration in original) (quoting *Small v. Fannie Mae*, 286 Va. 119, 127 (2013)). In doing so, this Court "must presume that the General Assembly chose, with care, the words that appear in a statute, and [it] must apply the statute in a manner faithful to that choice." *Johnson v. Commonwealth*, 292 Va. 738, 742 (2016).

[42] To hold otherwise would render the "latest known address" provision in Code § 12.1-19.1 useless and absurd. *J.V. v. Stafford Cnty. Sch. Bd.*, 67 Va. App. 21, 38 (2016) ("The

The record here, however, establishes at the very minimum that the most recent address with which FEB could have been reasonably associated in 2016 was the P.O. Box in La Quinta, California. That address had been marked as a forwarding address on the letter returned to appellant in 2013 from her attempted service on one of FEB's listed Utah addresses. But appellant never attempted to serve FEB at that address, either in 2013 or 2016, despite her counsel's lack of effort during those three years to verify a registered agent and mailing address for FEB in either Utah or California. Consequently, this Court cannot find that the circuit court erred in vacating the default judgment rendered against FEB; appellant's reliance on the objectively unreasonable Mission Vejo address rendered her substituted service ineffective and thereby deprived the circuit court of personal jurisdiction over FEB.

*Equitable Considerations For Motions Under Code § 8.01-428(A)*

A circuit court's exercise of its discretionary authority in equity is "subject to an abuse of discretion standard" of review. *Lewis v. City of Alexandria*, 287 Va. 474, 481 (2014).[43] "In stating that the court 'may' set aside a judgment of default, the language of [Code § 8.01-428(A)], according to its ordinary meaning, places the decision of whether to set aside a judgment by default within the discretion of [the] circuit court." *Sauder v. Ferguson*, 289 Va.

---

rules of statutory and regulatory 'interpretation argue against reading any legislative enactment in a manner that will make a portion of it useless, repetitious, or absurd.'" (quoting *Jones v. Conwell*, 227 Va. 176, 181 (1984))). Surely, a plaintiff cannot blindly rely upon the last address they personally associated with the defendant, which may be outdated, without exercising a reasonable amount of effort to ascertain whether an updated address has been publicly recorded.

[43] *See Callison v. Glick*, 297 Va. 275, 290-91 (2019) ("An abuse of discretion occurs in three principal ways: 'when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; and when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment.'" (quoting *Landrum v. Chippenham & Johnston-Willis Hosps., Inc.*, 282 Va. 346, 352 (2011))).

449, 457 (2015).[44] And because that statute "is a codification of pre-existing equitable practice, the court's discretionary power is informed by equitable considerations." *Id.* at 460.

Appellant argues, in assignment of error 6, that the circuit court "erred in failing to consider equity or equitable considerations" in deciding to vacate the default judgment.[45] In support of that argument, she asserts that the circuit court did not "mention any equitable considerations in its Order" setting aside the default judgment. As discussed further in Section V below, a circuit court is not required to "state for the record the reasons underlying their decisions," *Shannon v. Commonwealth*, 289 Va. 203, 206 (2015), or include "findings of fact and conclusions of law" in a final order, *Fitzgerald v. Commonwealth*, 223 Va. 615, 627 (1982). Indeed, the circuit court's rulings "come to us with a presumption of correctness." *Rainey v. Rainey*, 74 Va. App. 359, 377 (2022). Where, as here, the record does not clearly establish that the circuit court failed entirely to consider the equities of the case, this Court will not entertain a claim that the circuit court abused its discretionary authority in such manner. *See id.* ("The trial court is presumed to know and correctly apply the law 'absent clear evidence to the contrary in the record.'" (quoting *Milam v. Milam*, 65 Va. App. 439, 466 (2015))). The record here lacks

---

[44] *Cf. May v. R.A. Yancey Lumber Corp.*, 297 Va. 1, 18-19 (2019) (holding that the decision whether to grant an equitable defense falls within the trial court's discretion and is reviewed for an abuse of discretion); *Callison*, 297 Va. at 290 (reviewing the denial of an equitable remedy for an abuse of discretion because "awarding or denying equitable remedies in contract is within the sound discretion of the circuit court").

[45] Appellant does not specify, in her assignment of error, which equitable considerations the circuit court allegedly failed to consider. *See Banks v. Commonwealth*, 67 Va. App. 273, 290 (2017) ("[W]e do not consider issues touched upon by the appellant's argument but not encompassed by his assignment of error."). Nevertheless, appellant asserts in her opening brief, in parentheses, that "[t]he equitable considerations that the trial court should have considered include the relevant factors of significant weight that the trial court also failed to otherwise consider, as described *infra*." Addressed further below, the circuit court was not required to consider factors it deemed irrelevant nor was it required to provide in the final order an assessment of the relevant factors it did consider. *See Shannon v. Commonwealth*, 289 Va. 203, 206 (2015); *Fitzgerald v. Commonwealth*, 223 Va. 615, 627 (1982).

clear evidence to overcome the presumption that the circuit court considered the relevant equitable arguments raised by the parties below.

Appellant attempts to argue, in the alternative, that the circuit court made an error of law by holding "that equitable considerations should not or cannot be considered in motions to set aside default judgments" under Code § 8.01-428. Not only does that assertion depart from the basis for appellant's abuse of discretion claim as stated in her assignment of error,[46] but it also misconstrues and mischaracterizes the court's words, taking them out of context. *See Coward v. Wellmont Health Sys.*, 295 Va. 351, 363 n.11 (2018) (declining to "fix upon isolated statements of the trial judge taken out of the full context in which they were made, and use them as a predicate for holding the law has been misapplied" (quoting *Yarborough v. Commonwealth*, 217 Va. 971, 978 (1977))). On appeal, this Court does not "view a trial judge's statements from the bench in isolation." *Suffolk City Sch. Bd. v. Wahlstrom*, 302 Va. 188, 217 (2023).

The statement appellant references was made in response to her specific laches argument below that P&C brought its challenge "too late" after "an unexplained period of time." In a back-and-forth conversation with appellant's counsel, the circuit court made the following statements with the apparent intent to differentiate between situations in which a defense of laches was a relevant factor regarding the timing of a party's motion under Code § 8.01-428(A):

> THE COURT: [V]oid can be raised at any time.
>
> . . . .
>
> THE COURT: I'm not aware laches applies to a void judgment.
>
> . . . .

---

[46] Because "[a]ssignments of error are the core of the appeal," *Forest Lakes Cmty. Ass'n v. United Land Corp. of Am.*, 293 Va. 113, 122 (2017), this Court is "limited to reviewing [only] the assignments of error presented by the litigant," *Banks*, 67 Va. App. at 289. "Consequently, we do not consider issues touched upon by the appellant's argument but not encompassed by his assignment of error." *Banks*, 67 Va. App. at 290.

THE COURT: The motion to set aside a default judgment is based on the fact that it's a void judgment. I'm not aware of any authority that says laches applies to a motion to set aside a void judgment, because voids can be raised at any time.

After referring to *Sauder* for the proposition that "the court's discretionary powers [are] informed by equitable considerations," appellant stated that "if the Court would like to hear equity, I think the laches applies."[47] Appellant then fully argued why P&C's motion to set aside the default judgment should be denied on the basis of laches, concluding that P&C was "too late to bring a motion." That the circuit court held otherwise does not constitute proof that it utterly refused to consider appellant's equitable arguments.

To the contrary, this Court reads the circuit court's statements, in their full context, as a recognition of the distinction between the applicability of laches as a procedural bar versus as a factor in equity to be considered when evaluating the merits of a judgment debtor's motion under Code § 8.01-428(A). That position is not contrary to law. Code § 8.01-428(A) provides no time limit under which a judgment debtor may seek to vacate a default judgment alleged to be void for lack of jurisdiction. In contrast, the statute does create the opportunity to time-bar a challenge to a judgment brought on allegations of fraud. *See* Code § 8.01-428(A) (providing that a motion to set aside a default judgment "on the ground of fraud on the court shall be made within two years from the date of the judgment or decree").

---

[47] This Court notes that it was the plaintiff in *Sauder* who "filed a motion seeking to set aside the default judgment entered in her favor upon the ground that the judgment was void for lack of personal service on [the defendant]." 289 Va. at 459. There, the circuit court "did not reach the issue of whether the judgment was void. Instead, it ruled that the facts did not justify the relief sought by [the plaintiff]." *Id.* at 460. In particular, the circuit court found that the plaintiff's motion did "not seek to set aside the judgment so as to preclude its enforcement against [the defendant]; rather, she [sought] to continue the[ ] proceedings so as to nonsuit her case and take a 'second bite at the apple' against [the defendant]." *Id.* at 461 n.8. Additionally, the defendant had "not made a formal appearance to raise a challenge to the judgment himself." *Id.* Because the circuit court's factual findings were supported by the record, the Supreme Court affirmed the trial court's ruling. *Id.* at 460.

Accordingly, this Court finds that the circuit court did not err in restricting its consideration of laches, and other factors in equity, to the question of whether to grant P&C's motion on the merits, as opposed to dismissing the motion procedurally for untimeliness, as appellant argued. And within that scope, this Court cannot say that the circuit court made a clear error of judgment in granting P&C's motion because the equities in favor of appellant did not outweigh the inequity of enforcing a judgment against a party over whom the court lacked jurisdiction. *See McCulley v. Brooks & Co. General Contractors, Inc.*, 295 Va. 583, 589 (2018) ("It is elementary that one is not bound by a judgment *in personam*, resulting from litigation . . . to which he has not been made a party by service of process."); *Minh Duy Du v. Commonwealth*, 292 Va. 555, 564 (2016) ("Th[e] bell-shaped curve of reasonability governing our appellate review rests on the venerable belief that the judge closest to the contest is the judge best able to discern where the equities lie." (quoting *Sauder*, 289 Va. at 549)); *Callison v. Glick*, 297 Va. 275, 291 (2019) (finding that "the circuit court did not abuse its discretion" where "[r]easonable jurists could differ on whether the equities favored [the plaintiff/appellant] and the circuit court was not influenced by any mistake of law").

This Court, therefore, holds that the circuit court neither erred in concluding it lacked personal jurisdiction over FEB nor abused its discretion under Code § 8.01-428(A) to set aside "a judgment that was proved to be void ab initio." *Sauder*, 289 Va. at 458.

IV. <u>Dismissal of Case Justified by Appellant's Lack of Due Diligence</u>

Having discussed the ineffectiveness of appellant's initial attempt to serve FEB in 2016, this Court turns to the remaining issue underpinning the circuit court's decision to dismiss the case for untimely service: whether appellant "exercised due diligence to effect service on FEB."

Pursuant to Rule 3:5(e), a court is prohibited from entering any judgment or order "against a defendant who was served with process more than one year after the institution of the

- 24 -

action against that defendant *unless* the court finds as a fact that the plaintiff exercised due diligence to have timely service on that defendant." (Emphasis added). And service made "more than twelve months after the suit or action was commenced shall be timely [only] upon a finding by the court that the plaintiff exercised due diligence." Code § 8.01-275.1. "The determination of whether diligence has been used is a factual question to be decided according to the circumstances of each case." *Dennis v. Jones*, 240 Va. 12, 19 (1990). This Court reviews such "questions of fact under the highest level of appellate deference." *Thorpe v. Clay*, 57 Va. App. 617, 623 (2011).

Appellant contends the circuit court erred in finding that she had not exercised due diligence because it did not consider "facts of significant weight"—including appellant's second service on FEB only days before the April 22, 2022 hearing—and it did not state in the dismissal order any "reasons for its finding" or "what factors it considered in making that decision."[48] That argument is unavailing. Not only is a court not required to include such statements in its orders, *see Shannon*, 289 Va. at 206, but the circuit court here addressed on the record, at both the February 4, 2022 and April 22, 2022 hearings, why it found that appellant had not exercised due diligence despite her second attempt at service in April 2022.[49] Notably, the circuit court explicitly found that appellant's last-minute service on FEB, conducted at least one month after

<hr/>

[48] Appellant raises these same arguments as "relevant factors of significant weight" in her final assignment of error, which are addressed separately below.

[49] Appellant also states in her opening brief that the circuit court "did not consider [her] own 'mental health issues, including emotional anxiety and distress[.]'" Because that allegation is not included in the text of the assignment of error and is unsupported by any authority, this Court does not consider it. *See* Rule 5A:20(e); *Banks*, 67 Va. App. at 289-90 ("This Court is limited to reviewing the assignments of error presented by the litigant. . . . Consequently, we do not consider issues touched upon by the appellant's argument but not encompassed by his assignment of error.").

receiving the correct mailing address and years after the suit commenced, did not constitute due diligence.

Furthermore, because appellate courts "are not permitted to reweigh the evidence," *Nusbaum v. Berlin*, 273 Va. 385, 408 (2007), a circuit court's factual determinations are binding on this Court "and will be reversed 'only if they are plainly wrong or without evidence to support them," *Walker v. Commonwealth*, 78 Va. App. 52, 66 (2023) (quoting *Mercer v. Commonwealth*, 259 Va. 235, 243 (2000)). The record here contains ample evidence supporting the circuit court's finding that appellant did not exercise due diligence. *See Dennis*, 240 Va. at 19 (defining "diligence" as "devoted and painstaking application to accomplish an undertaking" (quoting *Webster's Third New International Dictionary* 633 (1981))). As the circuit court pointed out, appellant waited until four days before the hearing on the motions to dismiss to finally serve FEB, despite having learned the correct address for substituted service on FEB at least one month before the hearing and before filing pleadings in opposition to the motions to dismiss. This Court finds no error in the circuit court's decision to discount appellant's disingenuous argument that her last-minute service demonstrates due diligence.

In accordance with its determination regarding appellant's lack of due diligence, the circuit court then properly exercised its discretion to dismiss the case rather than grant appellant's motion for a nonsuit.[50] Despite appellant's assertions to the contrary, the record shows that the circuit court considered appellant's motion for a nonsuit before denying it in the final order disposing of the case. In doing so, the circuit court recognized that Code § 8.01-380 entitles a plaintiff to take a voluntary nonsuit *once* as a matter of right; all subsequent motions

---

[50] Although both may be premised on the same facts, a court's decision whether to grant a second or subsequent motion for nonsuit is separate from its determination of whether an appellant exercised due diligence in effecting timely service of process.

for nonsuit fall within the court's discretion.  *See* Code § 8.01-380(B) (providing that "[o]nly one nonsuit may be taken . . . as a matter of right, although the court may allow additional nonsuits").

Only after considering the unique circumstances and equities of the case—including appellant's first nonsuit in 2014, her denied request to take a second nonsuit in 2016, and the timing of her third request a week before the hearing on FEB's motion to dismiss the case—did the circuit court exercise its discretion to deny appellant's motion for another nonsuit in 2022. *See Minh Duy Du*, 292 Va. at 564 ("The exercise of judicial discretion presupposes 'that, for some decisions, conscientious jurists could reach different conclusions based on exactly the same facts—yet still remain entirely reasonable.'" (quoting *Thomas v. Commonwealth*, 62 Va. App. 104, 111 (2013))).  This Court finds nothing in the record, or in appellant's assignments of error, to suggest that the circuit court abused its discretion in denying appellant's third motion for a nonsuit and dismissing the case for lack of timely service.[51]

V.  <u>Record Does Not Reflect Circuit Court's Failure to Consider "Other Relevant Factors."</u>

Appellant's final assignments of error—7(a)-(h)—present a scattershot challenge to the circuit court's discretionary authority.  She alleges the circuit court abused its discretion in setting aside the default judgment, dismissing the case, and denying her motion for nonsuit because it failed to consider several "relevant factors of significant weight."  Whether the circuit court properly considered all relevant factors is a question reviewed on appeal for an abuse of discretion.  *Landrum v. Chippenham and Johnston-Willis Hosps., Inc.*, 282 Va. 346, 355 (2011).

"When we say that a circuit court has discretion, we mean that 'the [trial] court has a range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law.'"  *Galiotos v. Galiotos*, 300 Va. 1, 10 (2021)

_____

[51] *See* Code § 8.01-277(B) ("Upon finding that the plaintiff did not exercise due diligence to have timely service *and* sustaining the motion to dismiss, the court shall dismiss the action with prejudice." (emphasis added)).

(quoting *Landrum*, 282 Va. at 352).[52]  Otherwise, a trial court abuses its discretion if it (1) fails to consider a significant relevant factor, (2) fails to give significant weight to an irrelevant or improper factor, or (3) commits a clear error of judgment in assigning weight to all proper factors.  *Everett v. Tawes*, 298 Va. 25, 40 (2019); *Commonwealth v. Thomas*, 73 Va. App. 121, 127 (2021); *Lawlor v. Commonwealth*, 285 Va. 187, 213 (2013); *Landrum*, 282 Va. at 352.  "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Minh Duy Du*, 292 Va. at 564 (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)).  It necessarily follows that "the abuse of discretion standard requires a reviewing court to show enough deference to a primary decisionmaker's judgment that the court does not reverse merely because it would have come to a different result in the first instance."  *Lawlor*, 285 Va. at 212 (quoting *Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 322 (4th Cir. 2008)).

Here, appellant exclusively argues that the circuit court abused its discretion by failing to consider the following "factors":

(a) P&C's knowledge of the default judgment but failure to take any action against it until after the federal court ordered P&C to pay the judgment;

(b) P&C's attempted "forum shopping when it removed the case from the Fairfax County Circuit Court to Federal District Court" without moving to dismiss the default judgment in the circuit court;

(c) P&C's failure to retain "an attorney to make a special appearance for FEB" during the four years after learning of the default judgment;

(d) The federal court's entry of an order against P&C before P&C moved to set aside the default judgment and dismiss the case in the circuit court;

(e) The absence of any "presented defenses to the underlying merits of [appellant]'s claims" by either FEB or P&C;

---

[52] Although this "standard of review necessarily must include a review of any legal conclusions made concomitant with a lower court's exercise of discretion, that does not mean abuse of discretion review is partially de novo."  *Lawlor*, 285 Va. at 214.  Rather, "[t]o the extent the Court's analysis involves statutory interpretation, questions of statutory construction are also reviewed under a de novo standard."  *Ruderman*, 76 Va. App. at 302.

(f) Appellant's "second service on FEB";

(g) The existence of counsel to represent FEB now "if the case were to continue or be refiled after a nonsuit"; and

(h) The availability of "[o]ther less harsh remedies than dismissal . . . even if service defects were to have occurred."

The record, however, belies appellant's argument.[53] Even were this Court to assume that each of appellant's enumerated "factors" was "relevant," "of significant weight," and properly preserved for review, appellant has nevertheless failed to show that the circuit court refused to consider any of those factors.[54]

It is well established that "[t]he trial court is presumed to know and correctly apply the law 'absent clear evidence to the contrary in the record.'" *Rainey*, 74 Va. App. at 377 (quoting *Milam*, 65 Va. App. at 466). In accordance with that principle, trial courts are not required to "state for the record the reasons underlying their decisions," *Shannon*, 289 Va. at 206, or include "findings of fact and conclusions of law" in a final order, *Fitzgerald*, 223 Va. at 627. And mere silence on the assertions presented by a party does not create a presumption that the court abused its discretion by failing to consider such arguments. Therefore, unless directed otherwise by statute, a trial court is presumed to have properly considered all relevant, significant factors in making its ruling without having to explicitly address each factor or piece of evidence.

---

[53] Appellant does not argue on appeal that the circuit court made a clear error of judgment when weighing the evidence and factors presented. Instead, she argues only that the circuit court abused its discretion by failing to consider the factors she enumerates in her brief. At the end of all her claims for each factor, appellant concludes that "[t]here is nothing in the record or the trial court's orders that the trial court considered this relevant factor."

[54] *See Theologis*, 76 Va. App. at 603 ("Given the large number of issues presented here, we look for the best and *fewest* grounds on which to resolve this appeal."); *Butcher*, 298 Va. at 396 (acknowledging that "the doctrine of judicial restraint dictates that we decide cases on the best and narrowest grounds available" (internal quotation marks omitted) (quoting *Commonwealth v. White*, 293 Va. 411, 419 (2017))).

None of the statutes or related caselaw relevant to the issues raised here require the circuit court to explicitly state what factors it considered when setting aside the default judgment for lack of personal jurisdiction, dismissing the case for untimely service of process, and denying appellant's request for an additional nonsuit. Thus, in presuming the correctness of the circuit court's rulings and affording deference to its factual determinations, this Court finds nothing in the record clearly showing that the circuit court failed to consider any of the factors or other arguments appellant presented below.

To the contrary, the circuit court's rulings in favor of FEB demonstrate implicit rejection of appellant's arguments after due consideration.[55] Because appellant raised the same arguments below that she now makes on appeal, the record further shows that the circuit court was aware of appellant's position when making its rulings against her. Appellant's mere disagreement with the outcome is insufficient to overcome the presumption of correctness on appeal and this Court finds no reversible error upon the record.

CONCLUSION

For the foregoing reasons, this Court affirms the circuit court's judgments setting aside the default judgment against FEB and dismissing appellant's case with prejudice.

*Affirmed.*

---

[55] On brief, appellant claims that the circuit court's comment about laches being inapplicable was proof that it did not consider any of her equitable arguments. Assuming without deciding that appellant preserved her laches argument on appeal, this Court nevertheless concludes that the circuit court's statement does not negate the presumption that it considered all relevant factors. Moreover, the court's statement indicates that it did consider appellant's laches argument and simply determined that it was not a relevant factor under the situation at hand. Appellant has not challenged that conclusion as a mistake of law nor does she establish that no reasonable jurist could have come to a different opinion. *See Minh Duy Du*, 292 Va. at 564.