PRESENT:  All the Justices

COLIN McCULLEY

v.  Record No. 171117

BROOKS & CO. GENERAL
CONTRACTORS, INC.

OPINION BY
JUSTICE D. ARTHUR KELSEY
JULY 19, 2018

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
W. Reilly Marchant, Judge

In this case, a landlord obtained a default judgment against a commercial tenant and its

guarantor for unpaid rent.  The judgment was void as to the guarantor, however, because the

landlord failed to properly serve the complaint on him.  Despite this fact, the circuit court found

that the guarantor had entered a general appearance during post-judgment enforcement

proceedings and thereby had waived any objection to the validity of the default judgment.  We

disagree and reverse.

I.

In 2013, Brooks & Co. General Contractors, Inc. ("Brooks & Co.") leased office and

warehouse space to Plastic Lumber & Outdoor, LLC ("Plastic Lumber").  Colin McCulley

personally guaranteed Plastic Lumber's lease obligations.  In May 2016, Brooks & Co. filed a

complaint against Plastic Lumber and McCulley for unpaid rent, utilities, late fees, interest, and

attorney fees and costs.

Brooks & Co. served process on McCulley by posting it to his front door pursuant to

Code § 8.01-296(2)(b), *see* J.A. at 68, but the record fails to demonstrate that Brooks & Co.

followed the additional requirements of that statute to mail a copy of the process to McCulley 10

days before obtaining a default judgment and to file a certificate of mailing in the circuit court

clerk's office, *see id.* at 95.  After neither Plastic Lumber nor McCulley filed responsive

pleadings, Brooks & Co. obtained a default judgment against both defendants. The circuit court entered the default judgment on July 7, 2016.

On August 24, 2016, the circuit court clerk issued a summons commanding McCulley to appear before a commissioner in chancery on September 15 to answer debtor's interrogatories. McCulley's counsel thereafter contacted the commissioner and successfully requested that the date be rescheduled to September 27. On September 19, McCulley filed a motion to vacate the default judgment in the circuit court, the first sentence of which reads:

> COMES NOW COLIN MCCULLEY by counsel, MAKING A SPECIAL APPEARANCE FOR THE SOLE PURPOSE OF CONTESTING THIS COURT'S EXERCISE OF PERSONAL JURISDICATION [sic] BUT NOT OTHERWISE SUBMITTING TO THE COURT'S PERSONAL JURISDICATION [sic], pursuant to Virginia Code § 8.01-428(A) and respectfully prays that this Honorable Court will vacate the Default Judgment . . . as the same is a void judgment.

*Id.* at 65. The motion asserted that Brooks & Co. had failed to properly serve the complaint, thereby depriving the circuit court of personal jurisdiction over McCulley, and that the default judgment was therefore void. *See id.* at 65-67. McCulley concluded his motion by reiterating that he had "made this SPECIAL APPEARANCE for the sole purpose of contesting this Court's exercise of personal jurisdiction over him." *Id.* at 67. Brooks & Co. did not file any written response to the motion and later made no claim that its attempted service of process was valid.

At some point prior to September 27, 2016, McCulley's counsel advised opposing counsel that he would ask the commissioner to stay the debtor's interrogatories until the circuit court had an opportunity to rule on his motion to vacate the default judgment. *See id.* at 85, 90. On September 26, the day before the rescheduled meeting at the commissioner's office, Brooks & Co.'s counsel emailed his response: "There is no legal basis on which to stay the interrogatories, as such, I would object to the seeking of any stay of collection proceedings, as

2

the judgment is final." *Id.* at 90. A later email from Brooks & Co.'s counsel to the commissioner confirmed that McCulley had made the stay request and that the commissioner had ultimately rejected it. *See id.* at 91-92.

The debtor's-interrogatory proceedings continued for several months. After an order of production directed to McCulley went unanswered, Brooks & Co.'s counsel requested that the commissioner issue a show-cause order demanding compliance upon penalty of being held in contempt. *See id.* The commissioner responded by instructing the parties that "[a]ny enforcement action would have to come from the Circuit Court." *Id.* at 92. He advised them to present the enforcement request "at the same time as the Motion to Vacate [was] heard" in the circuit court. *Id.*

The circuit court conducted a hearing on McCulley's motion to vacate and ruled that the "initial service" of process on him "was defective" but that "McCulley waived any objection to this defect in service by making a general appearance in this case through his post-judgment participation in Debtor's Interrogatories." *Id.* at 95. The court's letter opinion, incorporated by reference into its final order, held that a general appearance during enforcement proceedings on a final judgment could effectively waive any claim that the judgment was void ab initio. *See id.* at 78-82.

II.

On appeal, Brooks & Co. concedes that it failed to certify that it had satisfied the mailing requirement of Code § 8.01-296(2)(b).[1] The only issue before us is whether McCulley waived

---

[1] *See* Oral Argument Audio at 15:58 to 16:17, 21:01 to 21:17. Failure to satisfy the mailing and certificate requirements of Code § 8.01-296(2)(b) renders any default judgment obtained void for lack of personal jurisdiction. *See National Tr. for Historic Pres. v. 1750 K Inv. P'ship*, 100 F.R.D. 483, 485-86 (E.D. Va. 1984), *aff'd sub nom. Fisher v. Beauchamp*, 755 F.2d 927 (4th Cir. 1985) (unpublished table decision), *and aff'd*, 755 F.2d 929 (4th Cir. 1985)

his right to challenge the default judgment as void ab initio by participating in the debtor's-interrogatory proceedings.  McCulley argues that he did not waive that right.  We agree.

## A.  GENERAL-APPEARANCE WAIVER

"It is elementary that one is not bound by a judgment *in personam* resulting from litigation . . . to which he has not been made a party by service of process."  *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 110 (1969).  "The consistent constitutional rule has been that a court has no power to adjudicate a personal claim or obligation unless it has jurisdiction over the person of the defendant."  *Id.*  Consequently, "a judgment against a party not before the court in any way will be as utterly void as though the court had undertaken to act when the subject-matter was not within its cognizance," *Blanton v. Carroll*, 86 Va. 539, 541, 10 S.E. 329, 329 (1889), "and may be so treated in any proceeding, direct or collateral," *Finkel Outdoor Prods., Inc. v. Bell*, 205 Va. 927, 931, 140 S.E.2d 695, 698 (1965) (quoting Martin P. Burks, Common Law and Statutory Pleading and Practice § 353, at 667-68 (T. Munford Boyd ed., 4th ed. 1952)).[2]

---

(unpublished table decision); 1 Charles E. Friend & Kent Sinclair, Friend's Virginia Pleading and Practice § 4.03[1][a][ii][B], at 4-25 n.119 (3d ed. 2017).  Thus, this case does not present a defect in service of process that renders such service merely voidable, rather than void.  *See generally Johnston v. Pearson*, 121 Va. 453, 456, 93 S.E. 640, 641 (1917) (distinguishing between process that is absolutely void and process that is merely voidable); 1 A.C. Freeman, A Treatise on the Law of Judgments §§ 341-42, at 691-98 (Edward W. Tuttle ed., 5th rev. ed. 1925) (same); Kent Sinclair & Leigh B. Middleditch, Jr., Virginia Civil Procedure § 7.11, at 671-72 (6th ed. 2014) (same).

[2] *See also O'Connell v. Bean*, 263 Va. 176, 178-80, 556 S.E.2d 741, 742 (2002); *Glumina Bank v. D.C. Diamond Corp.*, 259 Va. 312, 316, 527 S.E.2d 775, 777 (2000); *Dennis v. Jones*, 240 Va. 12, 16-19, 393 S.E.2d 390, 392-94 (1990); *Khatchi v. Landmark Rest. Assocs., Inc.*, 237 Va. 139, 142-43, 375 S.E.2d 743, 744-45 (1989); *Slaughter v. Commonwealth*, 222 Va. 787, 791-93, 284 S.E.2d 824, 826-27 (1981); *Beck v. Semones' Adm'r*, 145 Va. 429, 441, 446, 134 S.E. 677, 680, 682 (1926); *Brenham v. Smith*, 120 Va. 30, 34-35, 90 S.E. 657, 658 (1916); *Wilcher v. Robertson*, 78 Va. 602, 616 (1884).  *See generally* Sinclair & Middleditch, *supra* note 1, § 11.4[H], at 849, 856 ("Of course, if service of process was not properly performed, in most instances the judgment will be void and relief could be obtained, before and after the expiration

In this context, we mean void ab initio and thus "*ex vi termini*, a nullity," *Ferguson's Adm'r v. Teel*, 82 Va. 690, 696 (1886), not merely voidable, *see Singh v. Mooney*, 261 Va. 48, 51-52, 541 S.E.2d 549, 551 (2001) (distinguishing between judgments that are void ab initio and those that are merely voidable); 1 Henry Campbell Black, A Treatise on the Law of Judgments Including the Doctrine of Res Judicata § 170, at 248-50 (2d ed. 1902) (same).

We have held many times that a party making a general appearance *prior* to the entry of a final judgment waives any objection to the service of process by voluntarily submitting to the court's jurisdiction over him. *See, e.g.*, *Lyren v. Ohr*, 271 Va. 155, 159, 623 S.E.2d 883, 885 (2006) ("A general appearance 'is a waiver of process, equivalent to personal service of process, and confers jurisdiction of the person on the court.'" (citation omitted)); *New River Mineral Co. v. Painter*, 100 Va. 507, 509, 42 S.E. 300, 301 (1902) ("It is a well-established rule of practice that by appearing to the action the defendant waives all defects in the process and in the service thereof."); *Atlantic & Danville R.R. v. Peake*, 87 Va. 130, 140, 12 S.E. 348, 351 (1890) (re-iterating the same "well-established rule").

We have never held, however, that a general appearance *after* the entry of a final judgment retroactively waives an objection to the court's failure to obtain personal jurisdiction *prior* to the entry of the void judgment.[3] And for good reason: A mere general appearance after the entry of a void judgment is too little, too late, to save the judgment. Just as medicine may

---

of the first 21 days after judgment, pursuant to the provisions of Code § 8.01-428. . . . Lack of personal jurisdiction through void service of process also results in a void judgment.").

[3] We have addressed the effect of an appearance post-judgment in the opposite context, in which a trial court has set aside the original default judgment. *See Morotock Ins. v. Pankey*, 91 Va. 259, 264, 267, 21 S.E. 487, 487-88 (1895). In that case, we stated in dicta that the "judgment by default had been rendered by the court, and, when set aside, the defendant appeared and pleaded to the [complaint], and it was therefore too late for it afterwards to say that it had not been regularly brought into court." *Id.* at 267, 21 S.E. at 488; *see also Harvey v. Skipwith*, 57 Va. (16 Gratt.) 410, 414-15 (1863).

cure a sick man of a fatal disease but not revive him after his burial, a litigant can "cure" the

absence of personal jurisdiction by making a general appearance prior to final judgment but

cannot resurrect a void judgment thereafter.

Many courts have adopted this logic;[4] some have not.[5] Agreeing with the former courts,

we hold that a general appearance after the entry of a final judgment that is void ab initio because

of the absence of personal jurisdiction does not, by itself, convert the prior void judgment into a

valid one. Ruling otherwise, as one court succinctly put it, "defies logic and common sense."

*Abarca v. Henry L. Hanson, Inc.*, 738 P.2d 519, 520 (N.M. Ct. App. 1987).

---

[4] *See First Merit Bank, N.A. v. Wood*, C.A. No. 09CA009586, 2010 Ohio App. LEXIS 1131, at **4-5 (Ohio Ct. App. Mar. 21, 2010) (unpublished) (holding that a post-judgment appearance at a debtor's examination "cannot be equated with an appearance at the actual proceeding that resulted in the judgment itself" and thus did not constitute a waiver of the jurisdictional argument); *Heaston v. Austin*, 176 N.W.2d 309, 313 (Wis. 1970) (stating that defendant's appearance before the court's commissioner a year and a half after default judgment did not waive his objection to personal jurisdiction); *see also, e.g.*, *In re the Marriage of Smith*, 185 Cal. Rptr. 411, 413-18 (Cal. Ct. App. 1982); *Brown v. Amen*, 364 P.2d 735, 737 (Colo. 1961); *G.L. v. D.L.*, No. CAAP-15-0000485, 2017 Haw. App. LEXIS 468, at *13-14 (Haw. Ct. App. Nov. 22, 2017) (unpublished); *BAC Home Loans Serv'g, LP v. Mitchell*, 6 N.E.3d 162, 167-71 (Ill. 2014); *Doyle v. Willcockson*, 169 N.W. 241, 244 (Iowa 1918); *Cabinet for Health & Family Servs. ex rel. T.S. v. E.S.S.*, No. 2006-CA-000720-ME, 2007 Ky. App. Unpub. LEXIS 1223, at *3-6 (Ky. Ct. App. Apr. 6, 2007); *Hill Behan Lumber Co. v. Bankhead*, 884 S.W.2d 318, 323 (Mo. Ct. App. 1994); *Miller v. Steichen*, 682 N.W.2d 702, 707 (Neb. 2004); *Sawyer v. Sugarless Shops, Inc.*, 792 P.2d 14, 17 (Nev. 1990); *Irving Tr. Co. v. Seltzer*, 40 N.Y.S.2d 451, 456 (N.Y. App. Div. 1943); *Dowd v. Johnson*, 760 S.E.2d 79, 84 (N.C. Ct. App. 2014); *Barnes v. Wells*, 599 S.E.2d 585, 588-89 (N.C. Ct. App. 2004); *Gallagher v. National Nonpartisan League*, 205 N.W. 674, 675-76 (N.D. 1925); *In the Interest of P. RJ E.*, 499 S.W.3d 571, 575 n.4 (Tex. App. 2016); *Frazier v. Dikovitsky*, 144 S.W.3d 146, 149-50 (Tex. App. 2004); *Bulik v. Arrow Realty, Inc. of Racine*, 434 N.W.2d 853, 855 (Wis. Ct. App. 1988).

[5] We acknowledge, but reject, the view that a post-judgment general appearance, standing alone, is sufficient to waive any challenge to a void judgment based on service of process and to retroactively validate the judgment. *See, e.g.*, *Aetna Ins. v. Earnest*, 112 So. 145, 145 (Ala. 1927); *Scott-Lubin v. Lubin*, 49 So. 3d 838, 840-41 (Fla. Dist. Ct. App. 2010); *Rogers v. McCord-Collins Mercantile Co.*, 91 P. 864, 865-66 (Okla. 1907).

While a mere general appearance, by itself, is not enough to retroactively validate a judgment that is void for lack of personal jurisdiction as a result of defective service, it is possible for a litigant to forfeit the right to make that challenge to the judgment.  Under the prevailing view, outlined in the Restatement (Second) of Judgments § 66 (1982), a challenge to an "invalid" default judgment, raised for the first time after entry of the judgment, should be denied if (1) the challenger "had actual notice of the judgment" and ratified it by manifesting "an intention to treat the judgment as valid," *and* (2) granting relief from the judgment "would impair another person's substantial interest of reliance on the judgment."[6]

The Restatement recognizes "[t]he apparent anomaly of thus according a 'void' judgment the dispositive effect of a valid judgment" but correctly reframes the issue, not as whether a court can resuscitate a void judgment, but rather, whether a court can equitably estop a challenger from asserting the voidness of the judgment in the first place because of a "contract or concord, express or implied," that adopts the judgment "as a consensual resolution of the parties' rights." *Id.* cmt. a.  This view does not appear to be an innovation by the Restatement authors, as sometimes seems to be the case,[7] but rather a historical recognition that "[i]n an earlier era, when

---

[6] The very existence of this Restatement provision, with its two rigorous requirements for denying relief, necessarily presupposes that a mere general appearance is insufficient to retroactively validate a void judgment.

[7] *See* The American Law Institute, Capturing the Voice of the American Law Institute: A Handbook for ALI Reporters and Those Who Review Their Work 4-11 (2015) (describing "the two impulses at the heart of the Restatement process" as "the impulse to recapitulate the law as it presently exists and the *impulse to reformulate it*, thereby rendering it clearer and more coherent *while subtly transforming it in the process*" and instructing Reporters that they may decline to adopt the majority rule and "propose the better rule and provide the rationale for choosing it" (emphases added)); Geoffrey C. Hazard, Jr., *Foreword* to Restatement (Third) of Torts: Products Liability XVI (1998) (noting that the third Restatement of Torts "of course 'goes beyond the law' as the law otherwise would stand"); Herbert Wechsler, *The Course of the Restatements*, 55 A.B.A. J. 147, 149-51 (1969) (rejecting, as the director of the ALI, the "too simple . . . antithesis

law and equity were separately administered, it was possible to say that the judgment remained 'void' but that relief would be denied as a matter of the independent jurisprudence of equity." *Id.*

"As the Restatement points out, the theory is not that a void judgment has somehow become valid, as such; rather, as a result of the parties' conduct in connection with the judgment the judgement debtor is held estopped to assert that invalidity." *Katter v. Arkansas La. Gas Co.*, 765 F.2d 730, 734 n.8 (8th Cir. 1985); *see also Lee v. Graber*, 462 P.2d 492, 495 (Colo. 1969) ("The doctrine of estoppel is not in direct conflict with the rule that a judgment rendered without jurisdiction is void. The purpose of the estoppel is not to give validity to a void decree, but to prevent a party, by reason of his conduct, from asserting the invalidity of such decree."); *Leedy v. Leedy*, 399 S.W.3d 335, 340 (Tex. App. 2013) ("The application of estoppel in a particular case does not necessarily mean the judgment in question is thereby rendered valid; it simply means that the estopped party will not be heard to assert the judgment's invalidity in order to avoid its provisions.").

The ratification concept of Restatement § 66 parallels historic principles of equitable estoppel.[8] In this context, equitable estoppel applies when a party "claim[s] that the court had no jurisdiction" or attempts "to discountenance the validity of its process" yet nonetheless "c[a]me

---

between an affirmation of what the law is and one as to what it ought to be" and concluding that the Institute should "make clear . . . the areas in which it thinks renovation is in order").

[8] *See Katter*, 765 F.2d at 734 (stating that this section of the Restatement contains "principles essentially equivalent to those of equitable estoppel"). *See generally* 3 Freeman, *supra* note 1, §§ 1227-28, at 2552-56 (describing the authority of equity to "restrain the enforcement of a judgment because it is void," particularly for lack of service); 3 John Norton Pomeroy, A Treatise on Equity Jurisprudence § 802, at 179-84 (Spencer W. Symons ed., 5th ed. 1994) (describing the historical development of the doctrine of equitable estoppel as an expansion upon common-law estoppel); Christopher G. Tiedeman, A Treatise on Equity Jurisprudence § 106, at 135-36 (1893) (same).

into court and sought and obtained relief through proceedings regularly had therein" and thus "submit[ted] himself to the jurisdiction, and receive[d] benefits from its judgments." 3 Joseph Story, Commentaries on Equity Jurisprudence as Administered in England and America § 2020, at 581 (W.H. Lyon, Jr. ed., 14th ed. 1918).[9]

We need not expressly adopt or reject the Restatement's view, however, because neither of its two prerequisites is present in this case. First, McCulley never "manifested an intention to treat the judgment as valid," Restatement (Second) of Judgments § 66, at any point before or after filing his motion to vacate. The motion to vacate expressly denied that McCulley was making a general appearance and stated that he was appearing specially to challenge the validity of the default judgment. *See* J.A. at 65-67. Brooks & Co. emphasizes the fact that McCulley contacted the commissioner in chancery before filing the motion to vacate in a successful effort to reschedule the initial date for the debtor's interrogatories.[10] That action, however, did not

---

[9] *See also Insurance Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 704 (1982) ("In sum, the requirement of personal jurisdiction may be intentionally waived, or for various reasons a defendant may be estopped from raising the issue."); *Davis v. Wakelee*, 156 U.S. 680, 691-92 (1895) (finding appellant estopped from raising his personal-jurisdiction defense because "[h]e obtained an order which he could only have obtained upon the theory that the judgment was valid"); *Turner v. Turner*, 473 S.W.3d 257, 279-84 (Tenn. 2015) (concluding that the Restatement model "provides a sensible and balanced definition of the exceptional circumstances which justify denying relief from a default judgment that is void for lack of personal jurisdiction"). *Cf. Hiatt v. Tompkins*, 176 Va. 82, 87-88, 10 S.E.2d 489, 491 (1940) (stating that, "even if the process was void, appellants were estopped to challenge the validity of the proceedings" because they had consented to the appointment of the special commissioner who made a private sale of the land, arranged to repurchase it from the party to whom the commissioner had sold it, and accepted the proceeds remaining after the payment of debts and legal costs).

[10] Brooks & Co. relies upon *Shepherd v. Starbuck*, which noted in dicta (quoting Judge Burks) that making a "motion for a continuance" constitutes a general appearance waiving defects in the process. 118 Va. 682, 684, 88 S.E. 59, 60 (1916) (citation omitted). The leading case on this point, *New River Mineral Co.*, treated a defendant's appearance and consent to a motion for a continuance as a general appearance that waived defects in the process. *See* 100 Va. at 509, 42 S.E. at 301. But in that case, the appearance and consent to the continuance occurred *before* the final judgment. *See id.* No Virginia case has held that either filing or

*manifest* an intention to accept the validity of the default judgment or even hint at an intention to do so.[11]

An "express reference to the judgment" is insufficient to prove a manifest intention without a similarly clear "acknowledgement of its validity." Restatement (Second) of Judgments § 66 reporter's note to cmt. b. This conclusion follows from the unique nature of the equitable-estoppel rationale:

> The essential point is that parties to a dispute may resolve it not only by adjudication but by contract or concord, express or implied by conduct giving rise to an estoppel. Such a concord may be reached not only by direct communication with that purpose in view, but also by manifestation of intention concerning the matter in dispute. A judgment purporting to determine the rights of the parties, though lacking effect of its own force because of invalidity, can thus be adopted as a consensual resolution of the parties' rights. The party who obtained the judgment expresses his assent to the terms by obtaining the judgment; the other party expresses adherence by some act following the judgment in which the judgment is recognized as determinative.

*Id.* cmt. a; *see also id.* cmt. b (explaining that, absent equitable reasons justifying estoppel, "silence is not a manifestation of assent" and that "[i]t is not enough that the person against whom the judgment was rendered simply failed to take action to attack the judgment or to protest the fact that it had been rendered"); 3 Story, *supra*, § 2023, at 582-83 ("For an estoppel to arise from silence, the person upon whom the duty to speak rests must have an opportunity to speak,

---

consenting to a motion for a continuance *after* the entry of a concededly void judgment implicitly waives the right to challenge that judgment.

[11] We thus need not address the impact, if any, of Code § 8.01-277.1(A), which lists, as examples of a general appearance, filing certain pleadings or "[c]onducting discovery" on the merits of the dispute, "[s]eeking a ruling on the merits of the case," as well as "[a]ctively participating in proceedings related to determining the merits of the case." Nor must we address Code § 8.01-277.1(B)(1)-(2), which states: "A person does not waive any objection to personal jurisdiction or defective process if he engages in conduct unrelated to adjudicating the merits of the case, including, but not limited to: 1. Requesting or agreeing to an extension of time; 2. Agreeing to a scheduling order . . . ."

and knowledge of the circumstances requiring him to speak. In other words, his silence must amount to bad faith; and that, of course, cannot be predicated of silence in regard to a transaction of which one has no knowledge or means of knowledge.").

Nor does this case satisfy the Restatement's second prerequisite. Nothing in the record indicates that granting the motion to vacate "would impair another person's substantial interest of reliance on the judgment." Restatement (Second) of Judgments § 66. There has been no partial enforcement of the void judgment, no sale of debtor assets to others, no seizure of bank accounts or assets, or the like. Our declaration that the default judgment against McCulley is void will affect no third party. The contest appears to be entirely limited to the original parties to the lease dispute. We thus see neither "property interests, interests in status, or interest in repose from legal controversy," nor any other "interests of reliance," *id.* cmt. c, that would serve to preclude a challenge to this void judgment.[12]

III.

In sum, the circuit court erred in denying McCulley's motion to vacate the default judgment. Because the judgment was void as to McCulley, we enter final judgment declaring it so and vacate the judgment against him as well as all later orders seeking to enforce it.

*Reversed and final judgment.*

---

[12] We are aware of additional equitable considerations that some courts have relied upon to preclude a challenge to a judgment that is void for lack of personal jurisdiction based upon defective service of process. *See generally* 1 Freeman, *supra* note 1, § 265, at 529-32. We do not address, much less rule upon, these issues because Brooks & Co. does not assert them on appeal as a basis for affirmance.

11

JUSTICE McCULLOUGH, concurring.

I join the majority's opinion in full. I write separately, however, to highlight the fact that this case does not address, much less resolve, whether an appearance made prior to the entry of judgment before someone who is not a judge constitutes a general appearance that waives any defect in personal jurisdiction. A variety of institutional actors perform valuable functions that assist the courts in handling cases, including clerks of court, mediators, commissioners of accounts, and commissioners in chancery. These actors occasionally perform their functions based on an informal local arrangement, or their role can stem from a statutorily sanctioned delegation of judicial power. It may be that appearing before a person who is assisting the court in the dispatch of judicial business constitutes a general appearance that waives defects in personal jurisdiction, or it may be that the law treats such an appearance differently than an equivalent appearance before a court. A future case will have to answer that question.