COURT OF APPEALS OF VIRGINIA

Present: Judges Friedman, Raphael and White
Argued at Richmond, Virginia

LIONELL LEE HARDY

v.      Record No. 2094-24-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE KIMBERLEY SLAYTON WHITE
FEBRUARY 3, 2026

FROM THE CIRCUIT COURT OF NOTTOWAY COUNTY
Joseph M. Teefey, Jr., Judge

William N. Smith, III (Whaley Paules, LLC, on brief), for appellant.

Ryan Beehler, Assistant Attorney General (Jason S. Miyares,[1]
Attorney General, on brief), for appellee.

The Circuit Court of Nottoway County revoked Lionell Lee Hardy's suspended sentence for

a conviction on which he was originally sentenced in 2010. In December 2024, after finding Hardy

in violation of his probation, the trial court imposed the remaining three years and six months of

Hardy's suspended sentence. Hardy timely appealed and now challenges the trial court's subject

matter jurisdiction to revoke his suspended sentence. We affirm.

BACKGROUND

"On appeal, we view the record in the light most favorable to the Commonwealth

because it was the prevailing party below." *Delp v. Commonwealth*, 72 Va. App. 227, 230

(2020) (citing *Huguely v. Commonwealth*, 63 Va. App. 92, 110 (2014)). Hardy was convicted of

unlawful wounding in 2010 and sentenced to 5 years in prison, with 3 years and 6 months

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

suspended for 20 years, resulting in an active sentence of 1 year and 6 months, to run consecutively with any of Hardy's other sentences. His suspended sentence was subject to good behavior and supervised probation compliance until released by the court or his probation officer.

On January 23, 2024, Hardy's probation officer filed a major violation report. The report indicated that Hardy's supervision began on July 29, 2022,[2] and that, on January 4, 2024, Hardy was convicted in another jurisdiction of unlawfully shooting into an occupied dwelling and attempting to maliciously shoot into an occupied dwelling. Hardy was served with a "capias to show cause" for the probation violation on February 1, 2024.

After certain preliminary proceedings, the trial court heard the matter on May 7, 2024, where Hardy moved the court to dismiss the probation violation based on a lack of subject matter jurisdiction. Hardy argued that, while the court was permitted to suspend his sentence for more than the statutory maximum term of imprisonment when he was sentenced in 2010, under the 2021 amendments to the probation revocation statutes, trial courts could only suspend a sentence for a period of up to the statutory maximum sentence. In Hardy's view, because his statutory maximum sentence of five years had run, the court did not have jurisdiction over his probation violation. The Commonwealth requested a continuance to allow it to respond to Hardy's jurisdictional argument, which the court granted.

The trial court held another hearing on the matter on August 12, 2024, where Hardy reiterated his arguments from the previous hearing. The Commonwealth argued in response that the 2021 amendments did not apply retroactively and that Hardy was subject to his original suspended sentence. The court again continued the matter.

---

[2] Hardy was released from DOC on that date. Our record does not specify for what charges he had been serving a sentence.

At a third hearing on November 21, 2024, the trial court denied Hardy's motion to dismiss. The court admitted Hardy's major violation report, his plea agreement in Prince Edward County for shooting at an occupied dwelling and attempted malicious shooting at an occupied dwelling, and his January 4, 2024 sentencing order for those convictions, all without objection.[3] Hardy did not offer any evidence regarding the violation. The trial court found that the statute was not retroactive and that the 20-year period of good behavior imposed in 2010 remained in force and had not expired. The trial court then revoked Hardy's suspended sentence and reimposed the time remaining, to be served in active incarceration. Hardy timely appealed.

## ANALYSIS

On appeal, Hardy brings a single assignment of error: That the "trial court erred in finding that the trial court had jurisdiction under Code § 19.2-306 to revoke [his] previously suspended sentence." He supports this assignment of error with two distinct arguments: First, that the "trial court never initiated a show cause order in the case[,] rendering the trial court's revocation order void *ab initio*"; and second, that the "2021 amendments to Code § 19.2-303 retroactively prevented the trial court from revoking any of Mr. Hardy's sentence." We address each in turn.

### I. PROCEDURAL SUFFICIENCY OF THE SHOW CAUSE CAPIAS

Code § 19.2-306(B) provides that a court "may not conduct a hearing to revoke the suspension of sentence unless the court issues process to notify the accused or to compel his appearance before the court." It further states that "[s]uch notice and service of process may be waived by the defendant, in which case the court may proceed to determine whether the defendant has violated the conditions of suspension." *Id.*

---

[3] Although the court dated the Prince Edward County sentencing order as entered on January 12, 2023, the order also reflects that Hardy's sentencing hearing occurred on January 4, 2024.

Here, the trial court issued a "capias to show cause" on February 1, 2024, commanding Hardy's arrest to show cause why he was not in violation of his probation. The capias was executed with Hardy's arrest the same day. But Hardy argues that this capias did not satisfy Code § 19.2-306(B), which "requires the trial court to issue process or an order to show cause why his previously suspended sentence should [not] be revoked." In Hardy's opinion, a "true capias" must be "signed by a judge," while the capias here was signed by a deputy clerk, so that "[t]he court never issued any process on the record"; he analogizes the process that the trial court did issue to "a deputy clerk issuing a capias for felony indictment despite there being no record of any indictment certified as a true bill." Hardy characterizes the court's reliance on the show cause capias as "an unlawful procedure" and a "fundamental infirmity" so affecting its judgment as to render it void ab initio. *Hannah v. Commonwealth*, 303 Va. 106, 119-20 (2024). According to Hardy, "Code § 19.2-306(B) confers jurisdiction on a trial court to revoke a suspended sentence only after 'the *court* issues process to notify the accused or to compel his appearance before the court'" (Hardy's emphasis), implying that a capias signed only by a deputy clerk does not suffice as being issued by "the court."

Hardy did not raise this issue below, and "[a] basic principle of appellate review is that, *with few exceptions* . . . arguments made for the first time on appeal will not be considered." *Martin v. Ziherl*, 269 Va. 35, 39 (2005) (emphasis added). But one of these exceptions is that "[o]bjections to void ab initio judgments may be raised by any party in the case at any point during a valid direct or collateral proceeding where the voidness of the order is properly at issue, [even] . . . for the first time on appeal." *Hannah*, 303 Va. at 120. Circumstances where a judgment may be void ab initio include "any judgment rendered by a court without subject matter jurisdiction." *Jenkins v. Dir. of the Va. Ctr. for Behav. Rehab.*, 271 Va. 4, 13 (2006).

Hardy asserts that the revocation of his suspended sentence constitutes such a judgment. But in reaching this conclusion, he conflates the concepts of "active" and "subject matter" jurisdiction. "The term jurisdiction embraces several concepts," one of which is "subject matter jurisdiction, which is the authority granted through constitution or statute to adjudicate a class of cases or controversies." *Morrison v. Bestler*, 239 Va. 166, 169 (1990). Other jurisdictional concepts include "territorial jurisdiction, that is, authority over persons, things, or occurrences located in a defined geographic area; [and] notice jurisdiction, or effective notice to a party or if the proceeding is *in rem* seizure of a *res*." *Id.* Finally, there is active jurisdiction, which encompasses "the other conditions of fact [that] must exist which are demanded by the unwritten or statute law as the prerequisites of the authority of the court to proceed to judgment or decree." *Id.* (quoting *Farant Inv. Corp. v. Francis*, 138 Va. 417, 427-28 (1924)). "[A] court must possess both 'potential' and 'active jurisdiction' to adjudicate the merits of a case." *Whitt v. Commonwealth*, 61 Va. App. 637, 649 (2013). And, "'[P]otential jurisdiction' is . . . 'jurisdiction over the subject-matter.'" *Id.* (alteration in original) (quoting *Farant Inv. Corp.*, 138 Va. at 427).

"[T]here is a significant difference between subject matter jurisdiction and the other 'jurisdictional' elements. Subject matter jurisdiction alone cannot be waived or conferred on the court by agreement of the parties." *Morrison*, 239 Va. at 169-70 (citing *Lucas v. Biller*, 204 Va. 309, 313 (1963)). But the notice required under Virginia statute "*may be waived* by the defendant." Code § 19.2-306(B) (emphasis added). Consequently, to the extent that Code § 19.2-306(B) implicates the trial court's jurisdiction, it affects active jurisdiction, not subject matter jurisdiction. "Defects in active jurisdiction can be waived, and even if not waived, such defects are not subject to collateral attack." *Cilwa v. Commonwealth*, 298 Va. 259, 270-71 (2019) (first citing *Jones v. Commonwealth*, 293 Va. 29, 47-48 (2017); and then citing *Hicks ex rel. Hicks v. Mellis*, 275 Va. 213, 219 (2008)). Hardy treated the capias to show cause as a valid

and effective notice throughout the proceedings below, thus waiving any objections by his conduct. *Cf. McCulley v. Brooks & Co. Gen. Contractors, Inc.*, 295 Va. 583, 589-90 (2018) ("We have held many times that a party making a general appearance prior to the entry of a final judgment waives any objection to the service of process by voluntarily submitting to the court's jurisdiction over him." (emphasis omitted)); *New River Min. Co. v. Painter*, 100 Va. 507, 509 (1902) ("It is a well-established rule of practice that by appearing to the action the defendant waives all defects in the process and in the service thereof."). "[A] claim that a court lacks active jurisdiction cannot be raised for the first time on appeal and is subject to the contemporaneous objection rule." *Riddick v. Commonwealth*, 72 Va. App. 132, 143 (2020) (citing Rule 5A:18).

And even if Hardy had preserved the issue, it would still fail on review.[4] Code § 19.2-306(B) requires a court to issue process notifying the accused or compelling his appearance before the court. Hardy "does not contend that he did not get any notice of the proceedings, only that the notice he received was inadequate. However, the plain language of the statute . . . requires notice of the physical place and time of the hearing," which he received.

---

[4] Because Hardy did not raise the alleged defect in the show cause capias at the revocation hearing in the trial court, he has waived this claim for purposes of appeal, *see Rule* 5A:18, and he has not invoked any of the applicable exceptions to such waiver, s*ee Spanos v. Taylor*, 76 Va. App. 810, 827-28 (2023). However, we address the merits of his claim because he presses this supposed defect as a basis for finding the revocation order void ab initio and rendering the trial court without subject matter jurisdiction. *See Evans v. Smyth-Wythe Airport Comm'n*, 255 Va. 69, 73 (1998) ("[I]it is essential to the validity of a judgment or decree, that the court rendering it shall have jurisdiction of both the subject matter and parties" and that the judgment or order was not arrived at by a "mode of procedure employed by the court was such as it might not lawfully adopt." (quoting *Anthony v. Kasey*, 83 Va. 338, 340 (1887))); *J. P. v. Carter*, 24 Va. App. 707, 724 (1997) ("[T]he lack of subject matter jurisdiction can be raised at any time in the proceedings, even for the first time on appeal." (quoting *Morrison*, 239 Va. at 169-70)).

*Curry v. Commonwealth*, No. 0180-15-1, slip op. at 4, 2015 Va. App. LEXIS 389, at *6 (Dec. 22, 2015) (emphasis omitted).[5]  Nothing in the statute prescribes that such notice be signed by a judge rather than some other court officer.  In a revocation hearing, "[t]he important thing is not the form, but the fact, of notice."  *Price v. Commonwealth*, 51 Va. App. 443, 447 (2008) (citing *Copeland v. Commonwealth*, 14 Va. App. 754, 756 (1992)).

Hardy received adequate notice of the revocation hearing.  Thus, even assuming simply for the sake of argument that the notice provision of Code § 19.2-306(B) implicated a trial court's subject matter jurisdiction over revocation hearings, Hardy's claim would fail.

## II.  RETROACTIVITY OF THE AMENDMENTS TO CODE § 19.2-303

At the time Hardy was sentenced in 2010, Code § 19.2-303 empowered the trial court to "suspend imposition of sentence . . . [and] place the defendant on probation under such conditions as the court shall determine."  Code § 19.2-303 (2019).  The trial court sentenced Hardy to 5 years in prison, but under the authority of the statute as then formulated, suspended 3 years and 6 months of the sentence for a period of 20 years subject to "[g]ood behavior" and supervised probation compliance until released by the court or his probation officer.  *See Barrow v. Commonwealth*, 81 Va. App. 535, 547 (2024).  In 2021, the General Assembly amended and reenacted Code § 19.2-303 by, among other things, limiting the period of probation a court may impose to "up to the statutory maximum period for which the defendant might originally have been sentenced to be imprisoned."  *See id.*; *Johnson-Bey v. Commonwealth*, 303 Va. 386, 392 (2024).  Hardy asserts that the General Assembly's "2021 amendments to Code § 19.2-303 retroactively prevented the trial court from revoking any of [his] sentence."

---

[5] "Although not binding precedent, unpublished opinions can be cited and considered for their persuasive value."  *Castillo v. Loudoun Cnty. Dep't of Fam. Servs.*, 68 Va. App. 547, 572 n.7 (2018) (quoting *Otey v. Commonwealth*, 61 Va. App. 346, 350 n.3 (2012)); s*ee also* Rule 5A:1(f).

"[T]he presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic." *Johnson-Bey*, 303 Va. at 392 (alteration in original) (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994)). "It has long been the law of the Commonwealth that retroactive application of statutes is disfavored and that 'statutes are to be construed to operate prospectively only unless a contrary intention is manifest and plain.'" *Id.* at 392-93 (quoting *City of Charlottesville v. Payne*, 299 Va. 515, 528 (2021)). Further, "[t]he presumption against retroactivity has heightened weight when a statute is not merely amended—but amended and reenacted," as was Code § 19.2-303. *Id.* at 393. "'Reenacted,' when used in the title or enactment of a bill or act of the General Assembly, means that the changes enacted . . . are effective prospectively unless the bill expressly provides that such changes are effective retroactively on a specified date." *Id.* (emphasis omitted) (quoting Code § 1-238).

"No explicit or unequivocal language in the 2021 amendments states that they retroactively modify or annul provisions in prior criminal sentencing orders." *Id.* (citing *Hannah*, 303 Va. at 122-24, 124 n.7). "This conclusion leaves undisturbed the traditional view that '[f]or criminal sentencing, courts should apply the penalty in existence at the time of the commission of the underlying offense.'" *Id.* (alteration in original) (quoting *Hannah*, 303 Va. at 122). Hardy's 2010 conviction "involve[d] criminal offenses . . . committed prior to the effective date of the 2021 amendments" to Code §§ 19.2-303, -303.1, and -306. *Id.* at 393-94; *see also Barrow*, 81 Va. App. at 547. "These statutory amendments did not limit the [trial] court's sentencing options at [Hardy's] revocation hearing because they did not retroactively apply to the underlying crime." *Id.* at 394. Hardy concedes that, "[l]ooking at the plain language of Code § 19.2-303, there is no express provision requiring retroactive application." Both our own precedents and those of the Supreme Court make clear that the 2021 amendments to Code

§ 19.2-303 are not retroactive in their application, and did not deprive the trial court of jurisdiction to revoke Hardy's suspended sentence.

CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

*Affirmed.*