# COURT OF APPEALS OF VIRGINIA

## Record No. 0103-25-1

### SASIMOHAN MOTAPARTHY
v.
### KEERTHI PRIYA RAVI

Present: Judges AtLee, Chaney and Bernhard
Argued at Norfolk, Virginia

Opinion Issued June 2, 2026[*]

## FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
James Clayton Lewis, Judge

Oliver T. Ward (Rachel L. Yates; Law Office of Rachel Yates, PLLC, on briefs), for appellant.

Keerthi Priya Ravi (Ra Hee Jeon; Scott B. Ingram; Pender & Coward, P.C., on brief), *pro se*.

## MEMORANDUM OPINION BY
## JUDGE RICHARD Y. ATLEE, JR.

Sasimohan Motaparthy appeals the trial court's judgment finding him in civil contempt for not complying with the terms of a final divorce decree. He argues that the service of process of the trial court's rule to show cause was insufficient. We reverse the trial court's judgment and remand for further proceedings.

### BACKGROUND

In October 2024, the trial court entered a final decree granting a divorce between Motaparthy and Keerthi Priya Ravi. Relevant here, the final decree ordered Motaparthy to sell certain real property, divide the proceeds as part of equitable distribution, and make certain payments by November 8, 2024.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

On November 14, 2024, Ravi petitioned the trial court to issue a rule requiring Motaparthy to show cause why he should not be held in contempt for violating the final decree's terms. From August 2024 through December 17, 2024, however, Motaparthy was in India caring for his father. Motaparthy notified Ravi of this trip in August 2024. Ravi initially attempted to serve the petition upon the attorney that represented Motaparthy throughout the divorce proceedings, but counsel notified Ravi that he no longer represented Motaparthy after the entry of the final decree. Ravi then retained a private process server. On November 18, the private process server posted the petition to the front door of Motaparthy's Virginia Beach residence. Ravi did not mail Motaparthy a copy of the petition.

On November 22, the trial court issued a rule to show cause, ordering Motaparthy to appear for a hearing on December 13, 2024. On November 27, a private process server posted the show cause order on the front door of Motaparthy's Virginia Beach residence. Despite knowing Motaparthy was out of the country, Ravi did not attempt to serve him in India, nor did she mail him a copy of the rule to show cause. On December 2, Ravi sent an email to Motaparthy notifying him of the hearing and providing him with a copy of the show cause order. Motaparthy responded on December 12 stating that he was unable to travel back to the United States for the hearing the following day because he was receiving medical treatments in India.

Motaparthy did not appear for the show cause hearing. At the hearing, Ravi proffered that he "ha[d] been served" and was aware of the proceeding, but was in India and would not attend. The trial court entered an order finding Motaparthy in civil contempt. The court also appointed a special commissioner to sell certain real property, distribute the proceeds according to the terms of the final decree, and satisfy other debts.

A week later, Motaparthy filed a motion asking the trial court to vacate its contempt order on the grounds that he was not properly served with the show cause order. He alleged that Ravi

attempted to serve him by posting the order at his Virginia Beach residence despite knowing he was in India from August 2024 through December 17, 2024. He contended that Code § 8.01-274.1 requires a rule to show cause to be served "on the person," and because he was not served, the court lacked personal jurisdiction over him. He also argued that substituted service by posting was unjustified because Ravi had not attempted personal service. At a hearing on the motion, the trial court denied the motion to vacate the contempt order. Motaparthy now appeals.

ANALYSIS

As a threshold matter, we address our appellate jurisdiction. Ravi argues that the order denying the motion to vacate was not a final order because the trial court deferred ruling on her motion for attorney's fees, thus leaving a matter unresolved. We disagree. Code § 19.2-318 provides an independent grant of appellate jurisdiction over civil contempt orders: "[f]rom a judgment for any civil contempt of court an appeal may be taken to the Court of Appeals." This grant does not require a final order under Code § 17.1-405(A)(3); it requires only a judgment of contempt. *See Jenkins v. Mehra*, 281 Va. 37, 45-47 (2011). Moreover, even under Code § 17.1-405, the deferred attorney's fees ruling did not defeat finality. The order denying the motion to vacate did not modify, vacate, or suspend the underlying contempt order as required to extend the trial court's jurisdiction under Rule 1:1. *See Carrithers v. Harrah*, 60 Va. App. 69, 75 (2012). We accordingly have jurisdiction over this appeal.

Motaparthy argues that the trial court did not have personal jurisdiction to enter the civil contempt order because he was not properly served with the rule to show cause. We agree.

"It is elementary that one is not bound by a judgment in personam resulting from litigation . . . to which he has not been made a party by service of process." *Evans v. Evans*, 300 Va. 134, 141 (2021) (alteration in original) (quoting *McCulley v. Brooks & Co. Gen. Contractors, Inc.*, 295 Va. 583, 589 (2018)). "The consistent constitutional rule has been that a court has no power to

- 3 -

adjudicate a personal claim or obligation unless it has jurisdiction over the person of the defendant." *Id.* (quoting *McCulley*, 295 Va. at 589). "Whether a court has acquired personal jurisdiction over a defendant presents a mixed question of law and fact." *Koons v. Crane*, 72 Va. App. 720, 732 (2021). "We defer to the circuit court's factual findings and view the facts in the light most favorable to . . . the prevailing party below, but we review *de novo* the court's application of the law to those facts." *Id.* In addition, issues of statutory construction are reviewed de novo. *Id.*

Generally, the Commonwealth's various service-of-process statutes establish "a cascading series of efforts designed to provide due process by ensuring that the method of notice be 'reasonably calculated to reach the intended recipient.'" *Evans*, 300 Va. at 147 (quoting *Jones v. Flowers*, 547 U.S. 220, 228-29 (2006)). The "statutory hierarchies of methods of service—*primus* personal, *deinde* substituted, *deinde* constructive—are best understood not as 'alternatives but successive methods,' . . . ranging from most effective notice to least effective." *Id.* (quoting W. Hamilton Bryson, *Virginia Civil Procedure* § 3.02[3][d][ii][B], at 3-1 to 3-2 (5th ed. 2017)). "In practical terms, this sequencing means the more likely methods of achieving due process (personal service and substituted service) must be reasonably attempted before the least likely method (constructive notice) can be used, if at all, as a last resort." *Id.* at 148.

Consistent with those principles, "[a] rule to show cause entered by [a] court shall be *served on the person* alleged to have violated the court order, along with the accompanying motion or petition and any affidavit filed with such motion or petition." Code § 8.01-274.1 (emphasis added). Nevertheless, that statute does not compel the conclusion that personal service is the *only* permissible method of service for a rule to show cause. *Koons*, 72 Va. App. at 733-34. Rather, "the phrase 'served on the person' refers to the multiple methods for obtaining *in personam* ("personal")

- 4 -

jurisdiction over a party, which include substituted service pursuant to Code § 8.01-296(2)."[1]  *Id.* at 733.

Code § 8.01-296 provides the requirements for service of process "upon natural persons" as follows:

> 1. By delivering a copy thereof in writing to the party in person; or
>
> 2. By substituted service in the following manner:
>
>> a. If the party to be served is not found at his usual place of abode, by delivering a copy of such process and giving information of its purport to any person found there, who is a member of his family, other than a temporary sojourner or guest, and who is of the age of 16 years or older; or
>>
>> b. If such service cannot be effected under subdivision 2 a, then by posting a copy of such process at the front door or at such other door as appears to be the main entrance of such place of abode, provided that not less than 10 days before judgment by default may be entered, the party causing service or his attorney or agent mails to the party served a copy of such process and thereafter files in the office of the clerk of the court a certificate of such mailing. . . .  In any civil action brought in a circuit court, the mailing of a copy of the pleadings with a notice that the proceedings are pending in the court indicated and that upon the expiration of 10 days after the giving of the notice and the expiration of the statutory period within which to respond, without further notice, the entry of a judgment by default as prayed for in the pleadings may be requested, shall satisfy the mailing requirements of this section and any notice requirement of the Rules of Court.

Code § 8.01-296(1)-(2).

Under that statute, "[e]ither method of substituted service—on a family member or by posting—is valid service upon a 'natural person[]' if it occurs at the party's 'usual place of abode.'" *Koons*, 72 Va. App. at 733 (second alteration in original) (quoting Code § 8.01-296(2)).  And valid substituted service at a party's usual place of abode may grant a court jurisdiction over the party.  *Id.*

---

[1] Consistent with this principle, we reject Motaparthy's argument to the extent it asserts that a rule to show cause order may be served *only* via in-person service.

"A person's 'usual place of abode' is distinct from his 'last home' or 'last known residence.'" *Id.* at 734 (first citing *Washburn v. Angle Hardware Co.*, 144 Va. 508, 515 (1926); and then citing Code § 8.01-316(A)(1)(c)). "Substituted service at a party's last home or residence is insufficient to show proper service at his 'usual place of abode.'" *Id.* Nevertheless, a party's "temporary absence from his usual place of abode at the time of substituted service does not invalidate the effectiveness of that service." *Id.* at 735.

Ravi relies on *Koons* to argue that the substituted service here was valid. *Id.* at 733-35. But this position ignores certain material distinctions. In *Koons*, substituted service was valid in part because the defendant had "evaded personal service of the show cause order" by fleeing to Saudi Arabia. *Id.* at 736. Indeed, the record contained evidence that the plaintiff had "unsuccessfully attempted to serve [the defendant] in Saudi Arabia" in addition to sending him an e-mail to what appeared to be a valid address. *Id.* at 728. In other words, the plaintiff demonstrated through reasonably diligent efforts that she could not serve the defendant in person. *Id.* at 728, 736.

Such is not the case here. It is undisputed that Motaparthy was in India when Ravi posted service on the front door of his usual place of abode and that his home was vacant. Unlike in *Koons*, nothing in the record suggests that his travel was to evade personal service. Nor does the record show that Ravi made *any* attempt to serve him in person, let alone reasonably diligent efforts. Rather, at the show cause hearing, she proffered merely that Motaparthy was in India and had "been served." And at the motion to set aside the contempt order, she proffered that she knew Motaparthy was in India, which "is why [she] e-mailed the rule to show cause and a copy of the affidavit of service for the post[ed] service for him."

Nothing in Ravi's assertions demonstrate that she could not effectuate—or at least attempt to effectuate—in-person service on Motaparthy. She did not demonstrate that she made reasonably diligent efforts to personally serve Motaparthy through the statutory procedure or

otherwise, or that any such efforts would have been futile. Ravi was not permitted to use posted service as the first and only method of attempted service merely because Motaparthy was in India. She was still required to follow the statutory hierarchy of methods of service. Accordingly, her attempts to provide Motaparthy with notice were not "reasonably calculated, under all the circumstances, to apprise [him] of the pendency of the action and afford [him] an opportunity to present [his] objections." *Jones*, 547 U.S. at 226 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

Notwithstanding the above, Ravi argues that this Court should still affirm under the right result, different reason doctrine, because any defect in service was cured under Code § 8.01-288, which provides:

> Except for process commencing actions for divorce or annulment of marriage or other actions wherein service of process is specifically prescribed by statute, process which has reached the person to whom it is directed within the time prescribed by law, if any, shall be sufficient although not served or accepted as provided in this chapter.

The right result, different reason doctrine allows an appellee to "defend his judgment on any ground properly raised below whether or not that ground was relied upon, rejected, or even considered by the" trial court. *Spinner v. Commonwealth*, 297 Va. 384, 391 (2019) (quoting *Perry v. Commonwealth*, 280 Va. 572, 581 (2010)). But the doctrine is not available "where the development of additional facts is necessary." *Id.*

As an initial matter, Code § 8.01-288 explicitly does not apply when process must be served for an action "wherein service of process is specifically prescribed by statute." Here, the show cause statute provides that "[a] rule to show cause entered by [a] court shall be *served on the person* alleged to have violated the court order, along with the accompanying motion or petition and any affidavit filed with such motion or petition." Code § 8.01-274.1 (emphasis added). Because service of process is explicitly prescribed by Code § 8.01-274.1, Code § 8.01-288 does not apply.

And even if the statute did apply, additional factfinding would be necessary to determine whether Motaparthy actually received the notice of the hearing. Here, the record includes a copy of the email Ravi's counsel sent Motaparthy 11 days before the show cause hearing. But Motaparthy did not respond to the email—and thereby demonstrate that he had received it—until the day before the show cause hearing. And the trial court did not make any factual determination that he actually received the notice. Consequently, we cannot affirm under the right result, different reason doctrine.

CONCLUSION

For the foregoing reasons, the circuit court's judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*